CITY OF WILLACOOCHEE, GEORGIA; and Lace Futch, Mayor, City of Willacoochee, Plaintiffs,

v.

Malcolm BALDRIGE, Secretary of Commerce of the United States; The Bureau of the Census of the United States; and Daniel Levine, Acting Director of the United States Bureau of the Census, Defendants.

Civ. A. No. CV 581–05.

United States District Court,
S.D. Georgia,
Waycross Division.

Jan. 31, 1983.

---

Berrien L. Sutton, Homerville, Ga., for plaintiffs.

Mark Rutzick, and Robert Damus, Dept. Attys., U.S. Dept. of Justice, Washington, D.C., for defendants.

## ORDER

ALAIMO, Chief Judge.

The plaintiffs, the City of Willacoochee and its mayor, Lace Futch, have filed the present action to challenge the accuracy of the population count of Willacoochee. They contend that the defendants, all of whom were directly or indirectly in charge of the 1980 Decennial Census, simply erred in their count of Willacoochee and then arbitrarily and capriciously refused to correct their error.[1] The defendants have answered the

---

1. In their original complaint the plaintiffs primarily challenged the statistical methods of the Census Bureau which allegedly created an undercount of the population. They thereby joined a host of other litigants across the country who were also attacking the statistical soundness of the 1980 Decennial Census. *See, e.g., Carey v. Klutznick,* 508 F.Supp. 420 (S.D. N.Y.1980), *rev'd,* 653 F.2d 732 (2d Cir.1981), *cert. denied sub nom. Carey v. Baldrige,* 455 U.S. 999, 102 S.Ct. 1630, 71 L.Ed.2d 866 (1982); *Young v. Klutznick,* 497 F.Supp. 1318 (E.D. Mich.1980), *rev'd,* 652 F.2d 617 (6th Cir.1981),

*cert. denied sub nom. Young v. Baldrige,* 455 U.S. 939, 102 S.Ct. 1430, 71 L.Ed.2d 650 (1982). However, on July 9, 1981, the plaintiffs radically amended their complaint to delete all references to the statistical methods of the Census Bureau. This left the plaintiffs with two basic claims: (1) the defendants inaccurately counted the population of Willacoochee; and, (2) the defendants arbitrarily and capriciously refused to correct their count when presented with evidence of the error.

On July 14, 1981, the Judicial Panel on Multidistrict Litigation ordered that this action be

complaint and moved the Court to dismiss this action for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. The case is now before the Court for disposition of the motion to dismiss.

In their motion, the defendants focus on the plaintiffs' claim that the population count is erroneous. The defendants contend that this Court lacks jurisdiction to entertain such a claim or, in the alternative, that the claim is legally insufficient to justify any relief. Additionally, the defendants argue that this case is nonjusticiable because: (1) the plaintiffs lack standing; (2) the defendants' actions were actions within "agency discretion" and, hence, nonreviewable; (3) the action is untimely; and, (4) the action involves a political question.

In disposing of this motion, the Court points out that its duty is not to resolve every disputed point of law raised by the parties. Rather, the Court need only decide whether the complaint states a claim, within the jurisdiction of the Court, upon which relief can be granted. Discharging this obligation, and no more, the Court finds that the complaint does state a claim under the Administrative Procedure Act ("APA"), within this Court's jurisdiction, regarding the defendants' alleged failure to correct the population figures for Willacoochee.

Normally in a case such as this, where there is a motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim, the Court would first address the jurisdictional issue and then, if jurisdiction is found, discuss the sufficiency of the complaint. Here, however, the jurisdictional, justiciability and sufficiency issues are so intertwined that the usual approach would create more confusion than clarity. Rather, the Court will address first

the standing issue, then the claim under the APA and finally the other justiciability issues.

## I. STANDING

█ In order to establish standing to raise a claim under the APA, the plaintiffs must demonstrate that: (1) the challenged action resulted in injury-in-fact to the plaintiffs; (2) the interest invaded is arguably within the zone-of-interest to be protected by the statute; and, (3) there is no statutory prohibition of judicial review. *Barlow v. Collins,* 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970); *Association of Data Processing Service Organizations v. Camp,* 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970); *Baker v. Bell,* 630 F.2d 1046 (5th Cir.1980). In determining whether the plaintiffs have met these requirements, the Court will accept all of the plaintiffs' allegations as true and construe them in favor of the plaintiffs. *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343, 356 (1975).

### (A) *Injury-in-Fact*

The plaintiffs contend that they satisfy the injury-in-fact requirement because Willacoochee will lose state and federal aid due to the erroneous population figures compiled by the defendants. Specifically, the plaintiffs allege that Willacoochee receives aid from two federally funded programs, Fiscal Assistance to State and Local Governments ("revenue-sharing") and Comprehensive Employment Training Programs ("CETA"), which distribute benefits on the basis of population data supplied by the Census Bureau. They therefore conclude that the erroneous count[2] will deprive them of their share of the proceeds of those programs.

---

transferred to the District of Maryland for consolidated pretrial proceedings with the multitude of other census cases. The case remained in the District of Maryland until May 11, 1982, at which time it was remanded to this Court. Although the reasons for the remand were not disclosed in the Order, the briefs of the parties indicate that the remand was ordered, at least partially, because this action involves a simple but sweeping attack on the accuracy of the

population count of Willacoochee as opposed to the more common attacks on the statistical methods used by the Census Bureau.

2. The plaintiffs contend that the true population of Willacoochee at the time of the 1980 Decennial Census was 1,800 persons. The Census Bureau reported the population to be 1,117 persons.

■ The standard for determining whether there exists injury-in-fact is whether the plaintiffs have suffered a distinct and palpable injury causally connected to the challenged conduct such that relief granted by the Court would redress the claimed injury. *Duke Power Co. v. Carolina Environmental Study Group, Inc.,* 438 U.S. 59, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978). Under this standard, it is clear that injury-in-fact exists in regard to the *City* of Willacoochee. It is beyond peradventure that these programs, particularly the revenue-sharing and CETA programs, distribute funds based on data from the Census Bureau [3] and that the loss of these funds due to an inaccurate census would be a distinct and palpable injury. *Carey v. Klutznick,* 637 F.2d 834 (2d Cir.1980); *City of Camden v. Plotkin,* 466 F.Supp. 44 (D.N.J.1978). While it is true that the defendants are not in charge of the revenue-sharing and CETA programs, it is also true that the defendants' actions are sufficiently causally connected to the distribution of funds to satisfy the requirements for injury-in-fact. *Id.; see United States v. SCRAP,* 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973).

■ As regards the plaintiff Lace Futch, the Court is of a different opinion. Futch is in this case only in his official capacity as Mayor of Willacoochee. The complaint contains no allegations as to any loss of funds or other injury suffered by Futch in his capacity as mayor; therefore, the complaint fails to establish any injury-in-fact. Finding that Futch, unlike the City of Willacoochee, has failed to establish this crucial requirement for standing, the Court orders that he be dismissed as a plaintiff in this suit. *See City of Philadelphia v. Klutznick,*

503 F.Supp. 663, 672 (E.D.Pa.1980). Accordingly, throughout the remainder of this opinion the Court will consider the City of Willacoochee to be the only plaintiff in this case.

### (B) *Zone-of-Interest*

The second requirement for standing in an action under the APA is that the interest invaded be within the zone-of-interest to be protected by the statute. The statute referred to must in this case be the Census Act, 13 U.S.C. §§ 1 *et seq.* Under this act, the defendants had the responsibility to conduct the 1980 Decennial Census, including the population counts of the states and subdivisions thereof. 13 U.S.C. § 141. The question now before the Court is whether the zone-of-interest to be protected by the Census Act encompasses the distribution of funds to state and local governments based on population data.

This question is clearly answered in 13 U.S.C. § 141(e)(1):

If—

(A) in the administration of any program established by or under Federal law which provides benefits to State or local governments or to other recipients, eligibility for or the amount of such benefits would (without regard to this paragraph) be determined by taking into account data obtained in the most recent decennial census, and

(B) comparable data is obtained in a mid-decade census conducted after such decennial census,

then in the determination of such eligibility or amount of benefits the most recent data available from either the mid-decade or decennial census shall be used.

---

**3.** The regulations governing the administration of the revenue-sharing program provide that:

The data used in determination of allocations and adjustments to allocations, payable under this part, will be the latest and most complete data supplied by the Bureau of the Census, the Bureau of Indian Affairs, the Bureau of Economic Analysis and the Internal Revenue Service which are available prior to the allocations for an entitlement period unless, in the judgment of the Director, the data provided by those agencies are not cur-

rent enough or are not comprehensive enough to provide for equitable allocations. 31 C.F.R. § 51.20(a). Similarly, in regard to the CETA program, the regulations provide that:

In order to determine prime sponsor eligibility, the Secretary shall use the 1970 official Census as published by the U.S. Bureau of the Census or Bureau of the Census certified updates which are satisfactory to the Secretary of Labor.

29 C.F.R. § 95.4.

This subsection of § 141 unequivocally expresses the intent of Congress that census data be collected not only for reapportionment purposes but also for the accurate distribution of funds. Thus, the interest that. Willacoochee seeks to protect—its proper share of state and federal aid—is within the zone-of-interest of the Census Act. *Accord, City of Philadelphia v. Klutznick, supra* at 671; *City of Camden v. Plotkin, supra* at 50–51.

### (C) *Statutory Prohibition of Judicial Review*

The final requirement for standing is that there be no statutory prohibition of judicial review. Section 701(a) of Title 5 of the United States Code (containing the APA) permits judicial review of agency action unless "(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." 5 U.S.C. § 701(a). In the present case, the defendants do not claim that the Census Act expressly precludes judicial review nor does the Court find any such preclusion. Instead, the defendants argue that the acts complained of were committed to agency discretion and thus are immune from review pursuant to 5 U.S.C. § 701(a)(2). As support for this proposition, the defendants cite 13 U.S.C. § 141(a), which provides, in part, that "[t]he Secretary shall ... take a decennial census of the population ... in such form and content as he may determine, including the use of sampling procedures and special surveys...."

"[The agency discretion] exception is a very narrow exception.... The legislative history of the Administrative Procedure Act indicates that it is applicable in those rare instances where 'statutes are drawn in such broad terms that in a given case there is no law to apply.' S.Rep. No. 752 79th Cong., 1st Sess., 26 (1945)." *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 410, 91 S.Ct. 814, 820–21, 28 L.Ed.2d 136, 150 (1971) (footnote omitted). In the present case, the grant of discretion in 13 U.S.C. § 141(a) appears to encompass the methods used by the defendants to compile the census, but it does not give the defendants. *carte blanche* to report any figures they choose. Necessarily implicit in the Census Act is the command that the census be accurate. Accordingly, the Census Act circumscribes the defendants' discretion in compiling the final census figures and in disposing of any objections to those figures. At the very least, the Census Act requires that the defendants' decisions not be arbitrary or capricious. Given this limit on the defendants' actions, the case does not fit within the "agency discretion" exception, *see City of Camden v. Plotkin, supra* at 52, and there is no prohibition of judicial review.

Having found that Willacoochee has met the three requirements for standing, the Court must now consider the sufficiency of the complaint. At this point, however, it is important to reiterate that the Court is neither required nor permitted to approve or disapprove all the plaintiff's arguments for relief. The Court's only task is to determine if the plaintiff has stated *any* claim for which relief can be granted.

## II. SUFFICIENCY OF THE COMPLAINT

Among its many other contentions, Willacoochee explicitly claims that the defendants acted arbitrarily and capriciously when they failed to correct the population of Willacoochee after they were confronted with evidence of their error. In particular, Willacoochee alleges that the Census Bureau's own population estimates of Willacoochee in 1978 show that the 1980 figures are "grossly" erroneous.

■ Section 706 of Title 5 compels a reviewing court to "hold unlawful and set aside agency actions, findings, and conclusions found to be—(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law...." 5 U.S.C. § 706. In light of this mandate and construing the complaint liberally in favor of the plaintiff, the Court finds that Willacoochee has stated a claim of arbitrary and capricious agency action for which relief can be granted under the APA. Furthermore, such a claim is expressly within the jurisdiction of this

Court pursuant to 5 U.S.C. § 702. Therefore, unless the defendants can show some specific reason why this case is nonjusticiable, the motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim must be denied.

## III. JUSTICIABILITY CONSIDERATIONS

Besides the defendants' claims that Willacoochee lacks standing and that their actions are exempt from review as being within agency discretion, contentions which have been previously discussed and rejected, the defendants argue that this action is nonjusticiable as untimely brought and as a political question.

### (A) *Untimeliness*

The defendants argue that this action is untimely because Willacoochee filed suit after the Secretary of Commerce certified the official population count of the United States to the President on December 31, 1980. The defendants contend that any action challenging the Census must have been brought *before* the official certification of the population to the President.[4] The Court disagrees.

The official "decennial census date" for the 1980 census was April 1, 1980. 13 U.S.C. § 141(a). After that date, preliminary figures were published, and local governments were given an opportunity to challenge the figures. 15 C.F.R. § 90. Willacoochee, on July 25, 1980, filed an application under the Local Review Program to challenge the preliminary data. Six months and seven days later (on February 2, 1981), Willacoochee instituted the present action.

■ Considering the above course of events, the Court feels that Willacoochee has been anything but dilatory in its actions. Even if it had filed suit more quickly (*i.e.,* before the official certification on December 31, 1980), the probability of concluding the litigation before December 31 would have been negligible. Moreover, the need for prompt certification of the census for reapportionment purposes would have militated against an order enjoining the official certification pending the final disposition of the case. Therefore, even if Willacoochee had filed suit before December 31, 1980, the litigation would in all probability have proceeded after the official certification, just as this action is doing now. Accordingly, the Court finds no reason to hold that this action is untimely simply because it was brought after the official certification of the population.

### (B) *Political Question*

As a final argument, the defendants contend that this action raises nonjusticiable political questions. They rely on the language in Article I of the United States Constitution that states, "[t]he actual Enumeration shall be made within three years after the first Meeting of the Congress of the United States, and within every subsequent Term of ten Years, in such Manner as [Congress] shall by law direct." U.S.Const. art. I, § 2, cl. 3.

In *Powell v. McCormack,* the Supreme Court described the formulations in prior cases which have been held to have created political questions:

"a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of respect due coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question."

---

4. It is interesting to note that, in the challenges to the 1980 Census brought before the official certification, the defendants argued that the actions were untimely because the population count would not be final until *after* the official certification. *See, e.g., City of Philadelphia v. Klutznick, supra* at 673.

395 U.S. 486, 518–519, 89 S.Ct. 1944, 1962, 23 L.Ed.2d 491, 515 (1969), quoting from *Baker v. Carr,* 369 U.S. 186, 217, 82 S.Ct. 691, 710, 7 L.Ed.2d 663, 686 (1962). The defendants argue that the above-quoted portion of Article I is a textually demonstrable commitment of the census to Congress sufficient to turn any question concerning the census into a political question.

■ "In order to determine whether there has been a textually demonstrable commitment to a co-ordinate department of the Government, [the Court] must interpret the Constitution." *Powell v. McCormack, supra* 395 U.S. at 519, 89 S.Ct. at 1963, 23 L.Ed.2d at 516. Looking at Article I, this Court concludes that there is no textually demonstrable commitment that would preclude judicial review. As the district court in *City of Philadelphia v. Klutznick* stated:

> [t]he scant history of the constitutional provision suggests that the Framers sought only to protect the census from possible local bias and manipulation by vesting responsibility for its undertaking in the national Government. *See 1 The Records of the Federal Convention of 1787,* 580 (M. Farrand ed. 1911). There is, however, no indication of any similar reason why, within the federal government, it should be the exclusive responsibility of Congress and not subject to judicial review.

503 F.Supp. at 674. *Accord, Carey v. Klutznick, supra* at 838. While the Constitution may grant Congress the exclusive power to determine the *manner* in which the census is to be conducted, the Court finds no support for the argument that the Framers intended that all aspects of the conducting of the census be exclusively within the province of Congress and exempt from judicial review. Since the defendants raise no further arguments on the political question issue and the Court finds that none of the other formulations of political questions fits the present case, the Court therefore concludes that this action does not raise non-justiciable political questions.

## CONCLUSION

In light of the foregoing discussion, the Court holds that Willacoochee has alleged sufficient facts to confer standing and to state a claim, within the jurisdiction of this Court, for which relief can be granted. However, as to Lace Futch, the complaint fails to allege facts sufficient to constitute any injury to him in his official capacity as Mayor of Willacoochee so as to confer standing on him. Accordingly, the defendants' motion to dismiss is DENIED with respect to the City of Willacoochee, but GRANTED in regard to Mayor Lace Futch.