# The Authority of the Bureau of the Census to Adjust Population Data for Purposes Other Than Apportionment

The Commerce Department has the authority to use sampling and other recognized statistical procedures in order to correct the unadjusted population figures obtained in the decennial census for the year 2000, at least for purposes other than providing the basis for apportioning seats in the United States House of Representatives.

October 7, 1998

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
OFFICE OF MANAGEMENT & BUDGET

You have asked for our opinion whether the Secretary of Commerce ("Secretary"), and the Secretary's subordinate, the Director of the Bureau of the Census, have the authority, under existing statutory law, to use sampling and other recognized statistical procedures in order to correct the unadjusted population figures obtained in the decennial census for the year 2000, at least for purposes other than providing the basis for apportioning seats in the United States House of Representatives. We believe that those officials have such authority.

Article I, Section 2, Clause 3, vests in Congress "virtually unlimited discretion in conducting the decennial 'actual Enumeration'" for which that Clause calls. *Wisconsin v. City of New York*, 517 U.S. 1, 19 (1996). "Through the Census Act, Congress has delegated its broad authority over the census to the Secretary. See 13 U.S.C. § 141(a)." *Id.* (footnote omitted). The Secretary's authority for establishing census procedures may be delegated to the Director of the Bureau of the Census. *See Franklin v. Massachusetts*, 505 U.S. 788, 792, *appeal dismissed*, 505 U.S. 1215 (1992).

The provision in the Census Act primarily governing the Secretary's conduct of the decennial census is 13 U.S.C. § 141 (1994) ("Population and other census information"). Subsection 141(a) provides in part (emphasis added):

> The Secretary shall, in the year 1980 and every 10 years thereafter, take a decennial census of population as of the first day of April of such year, which date shall be known as the "decennial census date", *in such form and content as he may determine, including the use of sampling procedures and special surveys.*

Further, § 141(b) provides that "[t]he tabulation of total population by States under subsection (a) . . . as required for the apportionment of Representatives in Congress among the several States" is to be completed within nine months of the census date and reported to the President.

239

Although (as § 141(b) indicates) the "initial purpose" of the national decennial census was to provide a basis for apportioning seats in the House of Representatives among the States, "[t]he census today serves an important function in the allocation of federal grants to states based on population. In addition, the census also provides important data for Congress and ultimately for the private sector." *Baldrige v. Shapiro*, 455 U.S. 345, 353 (1982). For example, "[t]he Federal Government considers census data in dispensing funds through federal programs to the States, and the States use the results in drawing intrastate political districts." *Wisconsin*, 517 U.S. at 5–6.[1]

The authority of the Secretary under § 141 over the procedures for conducting the census is unquestionably broad. *See Wisconsin*, 517 U.S. at 19; *Franklin*, 505 U.S. at 819 n.20 (Stevens, J., concurring) (§ 141(a) "gives the Secretary broad discretion with respect to the 'form and content' of the census"). As one appellate court has said:

> The Constitution directs Congress to conduct a decennial census, and the implementing statutes delegate this authority to the Census Bureau. U.S. Const. Art. I, § 2, cl. 3; 2 U.S.C. § 2a; 13 U.S.C. § 141. There is a little more to the statutes — they specify a timetable, and a procedure for translating fractional into whole seats — but they say nothing about how to conduct a census or what to do about undercounts.

*Tucker*, 958 F.2d at 1417.[2]

We recognize, of course, the disputed question whether 13 U.S.C. § 195 (1994) limits the authority of the Bureau to make statistical adjustments for the specific purpose of determining the population figures to be used in apportioning congressional seats. Section 195 ("Use of sampling") provides:

---

[1] *See also* 13 U.S.C. § 141(e)(1) (requiring use of most recent data available from either decennial or mid-decade census for making eligibility determinations for federal grant programs based on taking account of data obtained in decennial census), *Franklin*, 505 U.S at 814 (Stevens, J., concurring) ("[T]he census report is distributed to federal and state agencies because it provides the basis for the allocation of various benefits and burdens among the States under a variety of federal programs. The Secretary also transmits the census figures directly to the States to assist them in redistricting."); *Glavin v. Clinton*, 19 F. Supp. 2d 543, 550 (E D. Va 1998) (three-judge district court) ("[c]ourts recognize that there is a direct correlation between decennial census population counts and federal and state funding allocations"); *National Law Ctr. on Homelessness & Poverty v Kantor*, 91 F 3d 178, 183–84 (D C. Cir. 1996) (plaintiffs "receive federal monies pursuant to a host of 'census-based' programs"); *City of Detroit v Franklin*, 4 F.3d 1367, 1374 (6th Cir 1993) ("many federal programs do disburse funds based upon population figures as reported in the decennial census"), *Tucker v United States Dep't of Commerce*, 958 F.2d 1411, 1415 (7th Cir 1992) ("the allocation of state and federal funds is heavily influenced by census figures"), *City of Willacoochee v. Baldrige*, 556 F. Supp 551, 553 (S.D. Ga 1983) (identifying two programs that "distribute benefits on the basis of population data supplied by the Census Bureau"); Jeffery S. Crampton, *Lies, Damn Lies and Statistics Dispelling Some Myths Surrounding the United States Census*, 1990 Det. C L. Rev 71, 87–91; Note, *Demography and Distrust: Constitutional Issues of the Federal Census*, 94 Harv. L. Rev. 841, 844–45 (1981)

[2] *See also City of Camden v. Plotkin*, 466 F Supp. 44,52–53 (D N J 1978) (reviewing cases holding that there is only limited scope for judicial review of methods used by Bureau of Census).

> Except for the determination of population for purposes of appor-
> tionment of Representatives in Congress among the several States,
> the Secretary shall, if he considers it feasible, authorize the use of
> the statistical method known as ''sampling'' in carrying out the
> provisions of this title.

This Office has followed several courts in concluding that § 195 does not bar the use of statistical adjustments even in determining the population count for use in apportionment. *See The Twenty-Second Decennial Census*, 18 Op. O.L.C. 184 (1994).[3] Two recent decisions, however, have held otherwise. *See Glavin*, 19 F.Supp. 2d at *550–53; United States House of Representatives v. United States Dep't of Commerce*, 11 F. Supp. 2d 76, 97–104 (D.D.C. 1998)(three-judge district court). The United States has appealed the latter of these two decisions to the Supreme Court, *see* Jurisdictional Statement, *United States Dep't of Commerce v. United States House of Representatives*, Sup. Ct. No. 98–404 (O.T. 1997), and we shall not address here the substantive question presented to the Court for review. The sole question we presently consider is whether, even if the ''except'' clause in § 195 limits the Secretary's authority to use statistically adjusted population figures for purposes of apportionment, §§ 141 and 195 otherwise authorize him to adjust such population data for all other purposes for which such data are used. In our opinion, the Secretary does possess such statutory authority under the Census Act.

First, the plain language of both § 141 and § 195 vests the Secretary with the authority to use methods of statistical adjustment in deriving final population figures. Section 141(a) authorizes theSecretary to ''take a decennial census of population . . . *in such form and content as he may determine, including the use of sampling procedures and special surveys*'' (emphasis added). Subsection 141(g) defines ''census of population'' to mean ''a census of population, housing, and matters relating to population and housing.'' Thus, the Secretary is authorized to use techniques of statistical adjustment in determining population figures, as well as in collecting other types of information sought in the census. Similarly, the plain terms of § 195 affirmatively *direct* the Secretary to use sampling in ''carrying out the provisions'' of the Census Act ''if he considers it feasible'' to do so (again, with the arguable exception of apportionment). The provisions of the Act of course include the statutory charge to take a census *of the population.*

Even the two courts that have held that the ''except'' clause of § 195 limits the Secretary's authority under § 141 appear to acknowledge that the plain language of § 141 authorizes the Secretary to use sampling and other such statistical procedures in contexts other than apportionment. ''A reading of the plain language

---

[3] *See also City of New York v United States Dep't of Commerce*, 34 F 3d 1114, 1124–25 (2d Cir 1994), *rev'd on other grounds sub nom, Wisconsin v City of New York*, 517 U.S 1 (1996); *Carey v. Klutznick*, 508 F. Supp 404, 415 (S.D N Y 1980), *City of Philadelphia v Klutznick*, 503 F Supp 663, 679 (E.D Pa 1980), *Young v Klutznick*, 497 F. Supp 1318, 1334–35 (E.D. Mich 1980), *rev'd on other grounds*, 652 F.2d 617 (6th Cir 1981)

of Section 141 itself . . . establishes that Congress' intent was to authorize sampling for numerous purposes of the census other than congressional apportionment. . . . [T]he only plausible interpretation of the plain language and structure of the Act is that Section 195 prohibits sampling for apportionment *and Section 141 allows it for all other purposes.*" *Glavin*, 19 F. Supp. 2d at 551–53 (emphasis added). *See also United States House of Representatives*, 11 F. Supp. 2d at 104 ("sampling should be used *in any and all areas in which that use is legal and/or constitutional*, but . . . not . . . in . . . apportionment") (emphasis added)).

We note also that the House of Representatives takes the position that §§ 141 and 195 "indisputably permit (indeed, require) the use of sampling in the decennial census to collect a myriad of statistical data about our nation." Memorandum for Plaintiff United States House of Representatives in Support of its Motion for Summary Judgment, at 30, *United States House of Representatives v. United States Dep't of Commerce*, 11 F. Supp. 2d 76 (D.D.C. 1998). The House further argues that "[s]ection 141(a) gives the Secretary the general authority to use sampling and special surveys in the decennial census to collect data *respecting population* and housing. That section surely permits sampling in lieu of a complete enumeration for purposes other than apportionment." *Id.* at 37 (emphasis added).[4]

The legislative history of the provisions in question also supports the understanding advanced here. Consider first § 195. As originally enacted in 1957, § 195 authorized, rather than required, the use of sampling. *See* Pub. L. No. 85–207, § 14, 71 Stat. 481, 484 (1957) (Secretary "may, where he deems it appropriate, authorize . . . 'sampling'"); 18 Op. O.L.C. at 193–94. Congress amended the section in 1976 to *require* the Secretary to use sampling, whenever "feasible" (i.e., possible). *See* Pub. L. No. 94–521, § 10, 90 Stat. 2459, 2464 (1976); *City of New York*, 34 F.3d at 1125. The Conference Report states that the amendment "differ[ed] from the [original] provisions of section 195 which grant[ed] the Secretary discretion to use sampling when it [wa]s considered appropriate. The section, as amended, strengthens the congressional intent that, *whenever possible*, sampling shall be used." H.R. Conf. Rep. No. 94–1719, at 13 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5476, 5481 (emphasis added). *See also* S. Rep. No. 94–1256, at 6 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5463, 5468.

Section 141(a) was also amended by the same 1976 legislation. *See* Pub. L. No. 94–521, § 7(a), 90 Stat. at 2461. The amendatory language authorized the Secretary to take the decennial census "in such form and content as he may determine, including the use of sampling procedures and special surveys." *Id.* The Senate Report on this amendment states that it was "added at the end of the subsection to encourage the use of sampling and surveys in the taking of the decennial census." S. Rep. No. 94–1256, at 4, *reprinted in* 1976 U.S.C.C.A.N. at 5466. More generally, in describing the purposes of the 1976 legislation as

---

[4] *See also United States House of Representatives*, 11 F. Supp 2d at 103 (noting that the House views § 141(a) as conferring "broad authorization    to use sampling in most aspects of data collection")

a whole, the Senate Report explained that one of its purposes was "to direct the Secretary of Commerce to use sampling and special surveys in lieu of total enumeration in the collection of statistical data whenever feasible." *Id.* at 1, *reprinted in* 1976 U.S.C.C.A.N. at 5464.

In light of the plain meaning of §§ 141 and 195, the judicial and congressional construction given to those sections, and the legislative history of the 1976 amendments to them, we conclude that they permit the Secretary to make statistical adjustment to an initial population count for — at least — all purposes other than providing the basis for apportionment.

In addition, we have reviewed the provisions of some 140 statutes that your Office advised us depend on population figures or census data for their implementation. We determined that nothing in the terms of any of these provisions prohibits the Bureau of the Census from using sampling in deriving population figures.

TODD D. PETERSON
*Deputy Assistant Attorney General*
*Office of Legal Counsel*