Hugh L. CAREY, Edward I. Koch, Alan Chou, Rose L. Dawson, Shmuel Lefkowitz, Michael Loizou, Edwin Martinez, Walter E. Marx, Brunilda Pacheco, Lamuel Stanislaus, The State of New York, and The City of New York, Plaintiffs-Appellees,

v.

Philip M. KLUTZNICK, Secretary of Commerce, Vincent P. Barabba, Director, Bureau of the Census, William F. Hill, Regional Director, New York Region, Bureau of the Census, Richard Bitzer, Acting Assistant Regional Director, New York Region, Bureau of the Census, Arthur G. Dukakis, Regional Director, Boston Region, Bureau of the Census, United States Department of Commerce, Bureau of the Census, Jimmy Carter, President of the United States, Edmund L. Henshaw, Jr., Clerk of the United States House of Representatives, Defendants-Appellants.

No. 672, Docket No. 80–6232.

United States Court of Appeals, Second Circuit.

Argued Dec. 8, 1980.

Decided Dec. 15, 1980.

See also, D.C., 508 F.Supp. 404; D.C., 88 F.R.D. 249; D.C., 508 F.Supp. 420.

Peter Bienstock, Asst. Atty. Gen., New York City (Robert Abrams, Atty. Gen. of the State of New York, Sheila Abdus-Salaam, Daniel Berger, New York City, of counsel), for plaintiffs-appellees, Hugh L. Carey and the State of New York.

Allen G. Schwartz, Corp. Counsel, of the City of New York, Mary McCorry, New York City, of counsel, for plaintiffs-appellees, the City of New York and Edward I. Koch.

Frederick A. O. Schwarz, Jr., New York City (Robert S. Rifkind, David A. Barrett, Roger H. Cummings, Michael J. Malone, III, John A. Redmon, Cravath, Swaine & Moore, New York City, of counsel), for the City of New York, and Edward I. Koch and for all other plaintiffs-appellees, except Hugh L. Carey and the State of New York.

Michael H. Dolinger, Asst. U. S. Atty., New York City (John S. Martin, Jr., U. S. Atty. for the Southern District of New York, Jane E. Booth, Steven E. Obus, Asst. U. S. Attys., New York City, of counsel), for defendants-appellants.

Before OAKES and MESKILL, Circuit Judges, and GAGLIARDI,* District Judge.

PER CURIAM:

This appeal, taken pursuant to 28 U.S.C. § 1292(a)(1), is from the grant of a preliminary injunction against the appellants, who collectively will be called the Census Bureau. The underlying action challenges the manner in which the Census Bureau conducted the 1980 census in the State of New York. It arises under Article I, section 2, clause 3, of the Constitution, section 2 of the Fourteenth Amendment, and the First, Fifth, and Fifteenth Amendments, as well as the statutes relating to the taking of the census and to the apportionment of representatives, 13 U.S.C. §§ 1–307 and 2 U.S.C. § 2a, and the Administrative Procedure Act, 5 U.S.C. §§ 551–576, 701–706. The appellees asserted that jurisdiction was conferred by 28 U.S.C. §§ 1331, 1337, 1361 and by 5 U.S.C. § 702, and they sought declaratory and injunctive relief.

The appellees include the City of New York and its mayor; the governor of the state; and several voters and taxpayers in various city, congressional, state senatorial and state assembly districts. Their basic complaint is that the census was conducted in a manner that will inevitably result in an undercount, an undercount that will not be evenly distributed across the state but that instead will occur at a higher rate in low-income areas populated largely by members of minority groups. A principal factual allegation is that the master address registers ("MARs") prepared for New York City were grossly inadequate because they were compiled from private commercial mailing lists that were out of date, incomplete, and lacked names of residents of poor and minority neighborhoods. Appellees also allege that the follow-up check of the MARs by the postal service and census workers was wholly inadequate. The appellees' ultimate contentions are that the resulting undercount not only will cause New York to lose at least one congressional seat to which it is entitled when the reapportionment is made, but that it also will result in the dilution of the votes of New York City residents—particularly members of minority groups—vis-a-vis those of other residents of the state with respect to the state legislature, and will generally cost the city and the state vast sums of money distributed under federal revenue sharing and other programs with statutory formulas tied to the census.

Originally the appellees sought a preliminary injunction enjoining the closing of census offices in the State of New York, but when the Census Bureau closed a large number of its district offices the request was modified; the appellees asked the district court to require the Census Bureau to process certain "Were You Counted" forms and to compare with Census Bureau records of New York City residents a computerized list of 1.2 million persons in New York City eligible for Medicaid.[1] They assert that this relief is necessary, despite any statistical adjustments that ultimately might be ordered in the underlying action, because they are entitled to the most accurate head count feasible as a basis for any subsequent statistical adjustment. Judge Werker found that the appellees had established the possibility of irreparable harm to the efficacy of their votes if the Census Bureau were not required to consider the "Were You Counted" forms and the computer list, and that this possibility was clear. He also found that the appellees are likely to succeed on the merits because they had submitted significant evidence concerning Census Bureau mismanagement and had raised serious questions as to whether some of the

---

* Honorable Lee P. Gagliardi of the United States District Court for the Southern District of New York, sitting by designation.

1. Comparing Census Bureau records with the computerized Medicaid list is not just a matter of cross-checking, but necessarily involves a field check when discrepancies are discovered.

policies and procedures employed by the Census Bureau were carried out in an irrational or arbitrary manner.

The Census Bureau argues that appellees did not demonstrate irreparable harm but merely a "possibility" of irreparable harm, that appellees failed to demonstrate a sufficient prospect of success on the merits to justify a preliminary injunction, and that the lower court entered the preliminary injunction in disregard of governing equitable principles. The Bureau notes that we have power of "full review" on appeal because the trial court did not hold an evidentiary hearing. *See Jack Kahn Music Co. v. Baldwin Piano & Organ Co.*, 604 F.2d 755, 758 (2d Cir. 1979); *Forts v. Ward*, 566 F.2d 849, 852 n.8 (2d Cir. 1977).

In terms of a showing of irreparable harm, *see Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979), the Census Bureau makes both a factual and a legal argument. The factual argument is that appellees can obtain the full measure of the relief they seek after trial. However, even though it may be possible to make statistical adjustments at a later date, there is no indication that changes in the conventional head count can or would be made once census figures are reported. As each day passes, retroactive head counting becomes more difficult—memories fade and people move. The computer list supplied by the appellees and the "Were You Counted" forms are both devices for adjusting the head count, and the Bureau has maintained that only head count figures can be included in the official census used for apportionment. It is quite apparent, therefore, that absent interim relief and with the filing of the current census figures by the December 31, 1980 deadline, *see* 13 U.S.C. § 141(b), appellees would be denied any appropriate increase in their head count. As such, appellees would be irreparably harmed by deprivation of their right to a fair apportionment.

As for the Census Bureau's legal argument, it is based on Judge Werker's use of the phrase "[t]he possibility of irreparable harm." The Bureau points out that an injunction "may not be used simply to eliminate a possibility of a remote future injury," *New York v. Nuclear Regulatory Commission*, 550 F.2d 745, 755 (2d Cir. 1977). Although the irreparable injury that the appellees sought to avert was a "possibility," every irreparable injury is merely a possibility until it is actual and can no longer be averted. Real and imminent, not remote, irreparable harm is what must be demonstrated and we think was demonstrated here for the reasons stated above. In this connection, the fact that the order concerning the computer list was mandatory in nature is justifiable because it constituted an equitable effort by the court to restore the "status quo," which was destroyed when the Census Bureau unilaterally closed its district offices during the pendency of a preliminary injunction motion to keep them open.

The Census Bureau also argues that if the injunction is enforced the Bureau cannot meet the statutory deadline of December 31, 1980 for filing the census report, *see* 13 U.S.C. § 141(b), and that it does not have the employees available to perform the functions ordered by the lower court. We see nothing sacred in the due date of the filing, especially when the work of the Census Bureau, at least as preliminarily demonstrated below, is incomplete. *See Young v. Klutznick*, 497 F.Supp. 1318 (E.D.Mich. 1980). It is the Bureau's own fault that the deadline is not being met, and in any event the reapportionment process will not commence for some considerable period of time thereafter. The mandatory injunction does involve work on the part of the Bureau, but the fact that some funds may have to be expended to hire additional personnel seems hardly a substantial problem when, according to the press, the Census Bureau spent $1 billion for its overall operation, *see Wall St. J.*, Dec. 9, 1980, at 1, col. 1. To be sure, the district court has now conducted a full trial and the parties tell us that a decision on the merits is imminent. If it is a decision in favor of the Census Bureau, it may indeed moot the preliminary injunction at issue here. On the other hand, if appellees'

claim is upheld, then injunctive relief ordering further adjustment of the head count may well be necessary to preserve the status quo.

In respect to likelihood of success on the merits, we preliminarily address the Bureau's standing, political question, and justiciability arguments. The Bureau, relying on *Sharrow v. Brown*, 447 F.2d 94 (2d Cir. 1971), *cert. denied*, 405 U.S. 968, 92 S.Ct. 1188, 31 L.Ed.2d 243 (1972), argues that appellees do not have standing to sue. It is true that in *Sharrow* this court held that the plaintiff lacked standing to challenge the alleged failure of the Census Bureau to adjust the results of the 1970 census by compiling statistics on the number of disenfranchised males in each state, as required by section 2 of the Fourteenth Amendment. Sharrow lacked standing because he had not come forward with any evidence on the alleged census defects and on the effect that proper nationwide enumeration would have had on New York State's number of representatives. This court held that, absent such evidence, potential damage to New York was too speculative to confer standing upon the plaintiff. Here, however, appellees have made a showing—one not made in *Sharrow*—that Census Bureau actions in New York State have caused a disproportionate undercount which will result in loss of representation in Congress.

We agree with the court in *City of Camden v. Plotkin*, 466 F.Supp. 44, 47–51 (D.N. J.1978), that citizens who challenge a census undercount on the basis, *inter alia*, that improper enumeration will result in loss of funds to their city have established both an injury fairly traceable to the Census Bureau and a substantial probability that court intervention will remedy the plaintiffs' injury. *See Warth v. Seldin*, 422 U.S. 490, 502–08, 95 S.Ct. 2197, 2207–2210, 45 L.Ed.2d 343 (1975). The present case is distinguishable from *FAIR v. Klutznick*, 486 F.Supp. 564 (D.D.C.1980), where no plaintiff alleged that his or her own state or congressional district would benefit if the relief sought were granted. The individual plaintiffs in this case have alleged concrete harm in the form of dilution of their votes and decreased federal funds flowing to their city and state, thus establishing their standing. Similarly, New York City and New York State have asserted a direct injury—particularly in light of the city's present financial condition—traceable to the Bureau's actions, and therefore have standing as recipients of federal funds under revenue sharing. Moreover, the State of New York has standing in its capacity as *parens patriae, see Missouri v. Illinois*, 180 U.S. 208, 241, 21 S.Ct. 331, 343, 45 L.Ed. 497 (1901). *See generally Hawaii v. Standard Oil Co. of California*, 405 U.S. 251, 257–59, 92 S.Ct. 885, 887–889, 31 L.Ed.2d 184 (1972).

The Census Bureau argues further that allegations as to mismanagement of the census made in the complaint involve a political question and otherwise fail to state a justiciable claim. The Bureau relies upon Justice Brennan's formulation of the political question doctrine in *Baker v. Carr*, 369 U.S. 186, 217, 82 S.Ct. 691, 710, 7 L.Ed.2d 663 (1962). However, its only authority for this reliance in the instant case is *Saunders v. Wilkins*, 152 F.2d 235, 237–38 (4th Cir. 1945), *cert. denied*, 328 U.S. 870, 66 S.Ct. 1362, 90 L.Ed. 1640 (1946), a decision which we view as inconsistent with *Baker v. Carr*, despite the comments in *Sharrow v. Peyser*, 443 F.Supp. 321, 324 n.5 (S.D.N.Y.1977), *aff'd mem.*, 582 F.2d 1271 (2d Cir. 1978). Beyond this, appellees assert a substantial constitutional claim and are not merely quibbling over the office procedures utilized by the Census Bureau. We fully recognize that there is no power to review agency action that is "committed to agency discretion by law," 5 U.S.C. § 701(a)(2), but this is not one of those "rare instances," *see Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410, 91 S.Ct. 814, 820, 28 L.Ed.2d 36 (1971), where that exception may be invoked. Here, rather, appellees allege an impairment of their "right to a vote free of arbitrary impairment," *Baker v. Carr*, 369 U.S. at 208, 82 S.Ct. at 705, a matter which cannot, of course, be foreclosed from judicial review by operation of the Administrative Procedure Act. *See City of*

*Camden v. Plotkin*, 466 F.Supp. at 52–53; *United States v. Little*, 321 F.Supp. 388, 391 (D.Del.1971) (Census Bureau action reviewable as to reasonableness of or irrational basis for methods used).

Having disposed of these threshold issues, we also agree with the district court that the appellees have demonstrated a likelihood of success on the merits. Appellees have sufficiently established a factual predicate for their claims to the effect that a census undercount is inevitable, that the undercount is particularly large among minority populations that are heavily concentrated in New York, and that Census Bureau procedures were inadequate in New York to avoid this disproportionate undercount. All of this may deprive New York State and New York City of the congressional representation and the federal funding to which they are entitled under the laws and Constitution of the United States. While mathematical exactness or precision is "hardly a workable constitutional requirement," *Reynolds v. Sims*, 377 U.S. 533, 577, 84 S.Ct. 1362, 1389, 12 L.Ed.2d 506 (1964), the Supreme Court has held that Article I, section 2 of the Constitution means that "as nearly as is practicable one man's vote in a congressional election is to be worth as much as another's," *Wesberry v. Sanders*, 376 U.S. 1, 7–8, 84 S.Ct. 526, 529–530, 11 L.Ed.2d 481 (1964), and that "our Constitution's plain objective [is to make] equal representation for equal numbers of people the fundamental goal," *id.* at 18, 84 S.Ct. at 535. *See also Wells v. Rockefeller*, 394 U.S. 542, 89 S.Ct. 1234, 22 L.Ed.2d 535 (1969); *Kirkpatrick v. Preisler*, 394 U.S. 526, 89 S.Ct. 1225, 22 L.Ed.2d 519 (1969).

Finally, with respect to the equitable principles governing this case, the Census Bureau relies heavily on the statement in *Union Carbide Agricultural Products Co. v. Costle*, 632 F.2d 1014, 1017 (2d Cir. 1980), that when a movant seeks a preliminary injunction which may adversely affect the public interest, "more than a 'fair ground for litigation' must be shown before the action will be stopped in its tracks by court

order." But the public interest has always been a factor to be considered in the granting of a preliminary injunction. *See, e. g., Yakus v. United States*, 321 U.S. 414, 440–41, 64 S.Ct. 660, 674–675, 88 L.Ed. 834 (1944). The problem is that the Census Bureau assumes that the public interest is solely with it, because it is a public agency. But the public interest also requires obedience to the Constitution and to the requirement that Congress be fairly apportioned, based on accurate census figures. Furthermore, it is in the public interest that the federal government distribute its funds, when the grant statute is keyed to population, on the basis of accurate census data. We see nothing in *Union Carbide* which cuts against appellees here, especially because, as we have already noted, the merits of this case provide more than a "fair ground for litigation."

We believe that what we have said above answers any and all remaining arguments of the Census Bureau, except perhaps the contention that the district court order amounts to an abuse of discretion because it overlooks the impact on other cities and states. We note only that other areas of the country that have similar complaints with Census Bureau methods are also instituting court actions, and these include the City of Detroit and the City of Philadelphia. The argument that a court decision may provide special treatment for the parties involved is one for the ultimate trial on the merits and decision on appeal.

Judgment affirmed.

GAGLIARDI, District Judge (dissenting):

Since I do not believe that the appellees have made the requisite showing of irreparable harm, I would reverse. The issue here is not whether appellees are entitled to ultimate relief, but whether they are entitled to preliminary relief *pendente lite.*

Appellees initially requested preliminary relief to prevent the Census Bureau from closing its local offices. Subsequently, they amended their request and asked that the District Court require the Bureau to com-

pare its count with the computerized Medicaid list and "Were You Counted?" forms.

Appellees have failed to establish that any relief ultimately granted upon a decision on the merits would not be adequate. The Majority finds, and I do not disagree, that the December 31 deadline is without binding legal significance and that a statistical adjustment could be ordered after trial on the merits. The Majority further finds, and again I agree, that retroactive headcounting becomes more difficult with the passage of time. However, the preliminary relief sought and ordered here—crosschecking of lists—is relief that could as easily be ordered and effectuated at a later date.[1] If appellees ultimately succeed, the court could at that time direct continued cross-checking.

Appellees, therefore, have not shown the need for interim relief.

---

1. The record does not support the Majority's assumption that such cross-checking necessarily involves subsequent field checks.