The **CITY OF NEW YORK**, The State of New York, the People of the State of California ex rel. **John K. Van De Kamp**, Attorney General, the City of Los Angeles, the City of Chicago, Dade County, Florida, the U.S. Conference of Mayors, the National League of Cities, the League of United Latin American Citizens, the National Association for the Advancement of Colored People, **Marcella Maxwell, Donald H. Elliott, John Mack, Olga Morales, Timothy W. Wright III, Raymond G. Romero, Antonio Gonzales,** and **Athalie Range,** Plaintiffs,

v.

**UNITED STATES DEPARTMENT OF COMMERCE, C. William Verity,** as Secretary of the United States Department of Commerce, **Robert Ortner,** as Under Secretary for Economic Affairs of the United States Department of Commerce, Bureau of the Census, **John G. Kane,** as Director of the Bureau of the Census, **Ronald W. Reagan,** as President of the United States, and **Donald K. Anderson,** as Clerk of the United States House of Representatives, Defendants.

No. 88 CV 3474.

United States District Court,
E.D. New York.

April 27, 1989.

---

## MEMORANDUM AND ORDER

McLAUGHLIN, District Judge.

Defendants move pursuant to Fed.R.Civ. P. 12(b)(1) to dismiss this action for want of subject matter jurisdiction. In the alternative, defendants move pursuant to Fed.R. Civ.P. 12(b)(6) or 56(b) for an order dismissing the Complaint. For the reasons discussed below, the motions are denied.

## FACTS

The Census Bureau is about to embark on its constitutionally mandated task of conducting the 1990 census. Plaintiffs bring this action challenging the methodology of conducting that census. Defendants object that plaintiffs do not have standing to sue.

Plaintiffs are the States of New York and California; the Cities of New York, Los Angeles, Chicago and Houston; Dade County, Florida; the United States Conference of Mayors; the National League of Cities; the League of United Latin American Citizens; and the NAACP. The individual plaintiffs are citizens and taxpayers of the aforementioned cities and states.

On the standing issue, the Court accepts all material allegations of the Complaint as true. *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975). Since plaintiffs have had an opportunity to supplement the Complaint with affidavits, the Court must be satisfied that plaintiffs' standing adequately appears from the record.

## DISCUSSION

### I. STANDING

To establish standing under Article III of the Constitution, a plaintiff must demonstrate (1) "a personal stake in the outcome of the controversy," *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962), which amounts to a "distinct and palpable injury to himself," *Warth v. Seldin, supra,* 422 U.S. at 501, 95 S.Ct. at 2206; (2) that is redressable by the Court, *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 39, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976); and (3) "a fairly traceable causal connection between the injury and the challenged conduct." *Duke Power Co. v. Carolina Environmental Study Group, Inc.,* 438 U.S. 59, 72, 98 S.Ct. 2620, 2629, 57 L.Ed.2d 595 (1978).

### A. *The Injury Element*

The decennial census determines, among other things, the apportionment of repre-

sentatives in Congress and in state legislatures, the allocation of Electoral College votes in presidential elections, and the equitable distribution of federal funds for housing, education, and transportation. Although Article I, § 2 of the Constitution has been interpreted to require that the census be as accurate as practicable, *see Karcher v. Daggett,* 462 U.S. 725, 103 S.Ct. 2653, 77 L.Ed.2d 133 (1983); *Wesberry v. Sanders,* 376 U.S. 1, 84 S.Ct. 526, 11 L.Ed.2d 481 (1964), since 1940, the decennial census has consistently undercounted the American population. Minority groups comprise a large portion of the undercount. Plaintiffs seek to secure their constitutional and statutory rights to maintain both the efficacy of their votes and their entitlement to an equitable portion of federal funds.[1] Defendants argue that this claimed injury is not "concrete" and is based on mere speculation that the 1990 will be inaccurate.

To invoke the jurisdiction of this Court, plaintiffs must demonstrate more than a mere "conjectural" or "hypothetical" injury —they also must show that they have sustained or are in immediate danger of sustaining a direct injury as a result of the challenged conduct. *City of Los Angeles v. Lyons,* 461 U.S. 95, 102, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983).

Defendants concede that plaintiffs' allegation of loss of federal funds satisfies the injury requirement of standing for the State and municipal plaintiffs. Because, however, a question has been raised whether the individual plaintiffs have standing to pursue their constitutional claims, *see FAIR v. Klutznick,* 486 F.Supp. 564, 569 n. 9 (D.D.C.), *appeal dismissed,* 447 U.S. 916, 100 S.Ct. 3005, 65 L.Ed.2d 1109 (1980), the Court will determine whether loss of political representation is sufficiently concrete for standing purposes.

Defendants argue that even if a disproportionate undercount occurs, and that it has an effect on the national apportionment of the United States House of Representatives, plaintiffs cannot demonstrate specifically where that effect will fall. In other words, defendants contend that no one, including plaintiffs, can determine in advance of the census which geographical area of the United States will be undercounted.

Plaintiffs, in response have submitted affidavits by persons who are former employees of the Census Bureau, tending to show (1) that, as defendants concede, there will be an undercount of minorities in the 1990 census; (2) that a disproportionate number of minorities reside in plaintiff States and municipalities; and (3) that as a result thereof, plaintiffs are now and will continue to be underrepresented in Congress.

■ I find that these factually supported allegations are sufficient to meet the requirement that plaintiffs suffer immediate threat of injury. The Court therefore concludes: that the individual plaintiffs have established a concrete injury in the form of alleged dilution of their votes; and that the State and municipal plaintiffs have established an injury in the form of loss of federal funding.

B. *Whether These Alleged Injuries Are Redressable By This Court*

Plaintiffs must also demonstrate that there exists a " 'substantial likelihood' that the relief requested will redress the injury claimed." *Duke Power Co., supra,* 438 U.S. at 75 n. 20, 98 S.Ct. at 2631 n. 20. As indicated earlier, the specific injuries are loss of political representation and loss of federal funding. The relief plaintiffs request would require defendants to conduct a full-scale "post-enumeration survey" and

1. The Court need not and will not cloud this already complicated issue by seeking to determine whether the organizational plaintiffs—who allege loss of both political representation and federal funding have standing or whether the other injury alleged by plaintiff States and municipalities—deprivation of the use of accurate population figures for government planning—is a sufficient injury for standing pur-

pose. Defendants make no serious challenge thereto. The Court only notes that the sufficiency of this latter injury is highly questionable because plaintiff States and municipalities are not required to use the Census Bureau's figures for any intrastate activity. *See Cuomo v. Baldrige,* 674 F.Supp. 1089, 1105–06 n. 31 (S.D.N.Y. 1987).

take any other steps necessary to correct the 1990 census for undercounts and overcounts in population. The question thus distills to whether there is a "substantial likelihood" that a "post-enumeration survey" will create the most accurate 1990 census possible thereby ensuring fair representation in Congress and equitable distribution of federal funds.

Defendants point out that even if a post-enumeration survey were ordered by this Court, it is unlikely that this relief would create the most accurate 1990 census. Defendants assert indeed that a post-enumeration survey would actually create a less accurate 1990 census. Evidence submitted by defendants demonstrates that the relief plaintiffs request would require the Census Bureau to make major changes in the census now planned and employ a method of adjusting the census that is untested and, hence, unproven. Defendants also note that the implementation of adjustment techniques will jeopardize their ability to meet their deadline, set by Congress at 13 U.S.C. § 141(b), to present a tabulation of total population by states to the President by December 31, 1990.

The latter argument, which addresses the operational feasibility of the adjustment, however, is a red herring. The nine-month time period between April and December set forth at § 141(b) is neither "sacred," as the Second Circuit recognized in *Carey v. Klutznick*, 637 F.2d 834, 837 (2d Cir.1980), nor "mandatory" as held by Judge Gilmore in *Young v. Klutznick*, 497 F.Supp. 1318 (E.D.Mich.1980), *rev'd on other grounds*, 652 F.2d 617 (6th Cir.1981), *cert. denied*, 455 U.S. 939, 102 S.Ct. 1430, 71 L.Ed.2d 650 (1982). It is not Congress' intent to sacrifice accuracy for the sake of timeliness. If the Census Bureau demonstrates that accurate adjusted figures cannot be compiled by December 31, 1990, this Court is empowered to grant it a reasonable extension of time.

Plaintiffs, on the other hand, submit evidence that adjustment of the census calculation *is* operationally feasible. *See* Plaintiff's Motion for Preliminary Injunction, Exhibit 24. Since most, if not all, of defendants' concern with the employment of a post-enumeration adjustment surrounds the operational feasibility of the adjustment, and since the adjustment can be made either within the statutory time frame or a judicial extension thereof, the dispositive question becomes whether a post-enumeration survey is technically feasible.

To support the technical feasibility of a post-enumeration survey, plaintiffs submit affidavits from Dr. Stephen Feinberg and Dr. Eugene Ericksen. These experts have concluded that correction methodology has been tested successfully, is feasible and would result in a substantially more accurate census. Plaintiffs also submit an affidavit from Dr. Barbara Bailar, who not only worked for the Census Bureau for 30 years, but was its Associate Director for Statistical Standards and Methodology. Dr. Bailar also opines that statistical adjustment is feasible. She is supported in that position by the Census Bureau Undercount Research Staff and each professional group from whom the Bureau sought an opinion—the Committee on National Statistics of the National Academy of Sciences; the Census Advisory Committee of the American Statistical Association and the Census Advisory Committee on Population Statistics.

The evidence submitted by defendants tending to contradict plaintiffs' proof of technical feasibility is so intertwined with their argument of operational *in*feasibility, that it is virtually impossible to cut this Gordian knot.

Needless to say, the dispute regarding technical feasibility is a classic battle of the experts. On this record, I conclude that plaintiffs have—at this juncture—sustained their burden of demonstrating that a substantial likelihood exists that a post-enumeration adjustment will produce the most accurate 1990 census possible.

C. *Causal Connection Between The Injury And The Challenged Conduct*

Plaintiffs finally must demonstrate that a causal connection exists between the inju-

ry alleged and the challenged conduct. *Duke Power, supra,* 438 U.S. at 72, 98 S.Ct. at 2629. With respect to the State and municipal plaintiffs, defendants concede that a causal connection does exist between the loss of federal funds and the failure to conduct a post-enumeration survey.

Defendants do not agree, however, that a causal connection exists between the loss of political representation by the individual plaintiffs and the challenged conduct. Defendants argue that general populations shifts, over which defendants have no control, break the chain of causation. Thus, whether loss of political representation *is caused by* a statistical undercount of the 1990 census is a question that cannot be answered with any degree of certainty. Defendants also claim that because the alleged injury is indirectly the result of government action, a greater showing of causation is required. *Simon, supra,* 426 U.S. at 44–45, 96 S.Ct. at 1927.

As discussed earlier in the context of the injury requirement, defendants do not seriously dispute that plaintiff States and municipalities, of which the individual plaintiffs are citizens and residents, have a disproportionate minority population that is chronically undercounted. It is absurd to suggest that a disproportionate loss of political representation will not follow in the wake of a miscount. In addition, evidence submitted by plaintiffs suggests that defendants recognize this inevitable result. In a May 1987 memorandum to defendant Ortner, his executive assistant advises that "states with large minority populations would benefit from an adjustment and states with small minority populations would lose [Congressional] seats." Bailar Affidavit, Exhibit 23. It thus appears quite evident from the record before me that the presence of this so-called independent variable—general shifts in population—has a minimal, if any, effect on the loss of representation as compared to the conceded inability to count that population accurately in the first instance. Moreover, it simply does not follow that, because the same result can be produced by two different variables, the separate effect of each

variable on that result cannot be measured independently.

Accordingly, even using a higher standard to determine causation, the Court concludes that the alleged loss of political representation can fairly be traced to defendants' failure to employ a post-enumeration adjustment.

Based on the foregoing, the Court concludes that plaintiffs' standing adequately appears from the record. Accordingly, defendants' motion to dismiss on this ground is denied.

## II. SUMMARY JUDGMENT AND STANDARD OF JUDICIAL REVIEW

Defendants also seek to dismiss the Complaint on the grounds that it fails to state a claim for relief under the Administrative Procedure Act ("APA"), and that pursuant to Rule 56, summary judgment is appropriate. The Court will not reach the merits of the summary judgment motion. Clearly, the motion is premature. Plaintiffs conducted scant, if any, discovery before defendants filed this motion. Moreover, in support of its motion, defendants filed a woefully incomplete statement pursuant to Local Rule 3(g) asserting only conclusory issues of law. Defendants failure to carry their burden of identifying, in the Rule 3(g) statement, the *facts* it alleges are undisputed constitutes grounds for denying the motion. The Court will, however, address the question of judicial review.

Defendants maintain that the APA precludes judicial review of the Department of Commerce's determination not to correct the 1990 census because such a decision is committed to agency discretion by law. *See* 5 U.S.C. § 701(a)(2). Agency action based upon discretion falls beyond the pale of judicial review only when the action is based upon a statute that is drawn so sweepingly that a reviewing court has no "meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney,* 470 U.S. 821, 830, 105 S.Ct. 1649, 1655, 84 L.Ed.2d 714 (1985). The statute upon which the Department of Commerce action is based, 13 U.S.C. § 141,

provides that "[t]he Secretary shall ... take a decennial census of population ... in such form and content as he may determine." 13 U.S.C. § 141(a). Defendants believe that this statutory language gives the Secretary of the United States Department of Commerce unlimited and judicially unreviewable discretion to determine whether a post-enumeration adjustment for undercounting is appropriate.

█ A strong presumption exists that Congress intends judicial review of administrative agency action. *Bowen v. Michigan Academy of Family Physicians,* 476 U.S. 667, 670, 106 S.Ct. 2133, 2135, 90 L.Ed.2d 623 (1986). An exception to reviewability exists, in rare instances, when the agency action is committed exclusively to agency discretion by law. *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 410, 91 S.Ct. 814, 821, 28 L.Ed.2d 136 (1971). In determining whether § 141 operates to foreclose judicial review, this Court is not writing on a blank slate.

In *Carey v. Klutznick, supra,* an action challenging the 1980 census, the Second Circuit explicitly rejected the contention that a federal court is precluded by operation of § 701(a)(2) from reviewing the Secretary's action. In so concluding, the Second Circuit stated: "[plaintiffs] allege an impairment of their 'right to a vote free of arbitrary impairment' ... a matter which cannot, of course, be foreclosed from judicial review by operation of the Administrative Procedure Act." *Id.* 637 F.2d at 838–39 (citations omitted). Numerous other courts have come to the same conclusion. *See, e.g., City of Willacoochee v. Baldrige,* 556 F.Supp. 551, 555 (S.D.Ga.1983); *City of Philadelphia v. Klutznick,* 503 F.Supp. 663, 674–75 (E.D.Pa.1980); *Young v. Klutznick, supra,* 497 F.Supp. at 1335; *City of Camden v. Plotkin,* 466 F.Supp. 44, 51–53 (D.N.J.1978); *United States v. Little,* 321 F.Supp. 388, 391 (D.Del.1971); *Borough of Bethel Park v. Stans,* 319 F.Supp. 971, 976–77 (W.D.Pa.1970), *aff'd,* 449 F.2d 575 (3rd Cir.1971); *West End Neighborhood Corp. v. Stans,* 312 F.Supp. 1066, 1068 (D.D.C.1970).

Defendants' attempt to depreciate the *Carey* decision, by citing more recent circuit and Supreme Court cases, is unavailing. Only one of the cases upon which defendants rely concerns a claim of constitutional magnitude. In that one case, *Webster v. Doe,* — U.S. ——, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988), the Supreme Court held that a decision by the director of the Central Intelligence Agency to fire an employee based on his homosexuality was unreviewable because it was made pursuant to a statute that committed such decisions to the director's discretion. The *Doe* court found that the decision was unreviewable pursuant to § 701(a)(2)—in other words, that plaintiff could not complain that his termination was not—as set forth in the statute—"necessary or advisable in the interests of the United States." *Id.* 108 S.Ct. at 2054. The Court also held, however, that plaintiff could seek review of constitutional claims arising out of the director's decision pursuant to that statute. Thus, the *Doe* court concluded that § 701(a)(2) did not foreclose consideration of plaintiff's claim that the director's action deprived him of his right to privacy, due process and equal protection.

█ The *Carey* court as well as the overwhelming majority of cases considering this issue, have concluded that § 701(a)(2) of the APA is inapplicable to the census statute. I am not persuaded that the reasoning of *Doe* changes that result. I thus conclude that the Court is vested with power to review the Secretary's decision not to adjust the 1990 census. I turn now to what standard I will use for that review.

Following the second bench trial on the merits of the various challenges made to the 1980 census, Judge Sprizzo in *Cuomo v. Baldrige,* 674 F.Supp. 1089 (S.D.N.Y. 1987), determined that the arbitrary and capricious standard of review was appropriate. Judge Sprizzo found that it would be "wholly inappropriate ... to substitute [his judgment] with respect to the feasibility of an adjustment for that of the [Census] Bureau unless, at a minimum, the plaintiffs proved that the Bureau's determination was unreasonable." *Id.* at 1105. Buried in

a footnote, plaintiffs attempt to argue that the arbitrary and capricious standard should not be used. Surprisingly, plaintiffs make this assertion although their fourth claim for relief alleges that the failure to adjust the census is arbitrary, capricious, contrary to law and an abuse of discretion.

Courts that have previously entertained actions challenging the method of conducting a decennial census have consistently used the arbitrary and capricious standard. *See Cuomo v. Baldrige, supra,* 674 F.Supp. at 1105; *Carey v. Klutznick,* 508 F.Supp. 420, 429–430 (S.D.N.Y.1980); *City of Philadelphia v. Klutznick, supra,* 503 F.Supp. at 675–76; *City of Camden v. Plotkin, supra,* 466 F.Supp. at 52–53; *Borough of Bethel Park v. Stans, supra,* 319 F.Supp. at 977; *West End Neighborhood Corp. v. Stans, supra,* 312 F.Supp. at 1068. No serious argument has been advanced by plaintiffs that would require departure from this precedent. I thus conclude that the arbitrary and capricious standard as set forth in § 706 of the APA will guide my review of the Secretary's determination.

Plaintiffs, in the same obscure footnote, suggest that it is premature to decide the standard of reviewability at this early juncture. I disagree. An early determination of this critical issue is essential to enlighten the parties in their preparation for discovery and for future hearings.

### III. WHETHER THE COMPLAINT STATES A CLAIM UNDER THE CONSTITUTION

The final issue is defendants' motion to dismiss the Complaint on the ground that it does not state a claim under the Constitution.

In *Carey v. Klutznick, supra,* 637 F.2d at 839, the Second Circuit, quoting *Wesberry v. Sanders, supra,* stated that Article 1, § 2 of the Constitution means that " 'as nearly as practicable one man's vote in a congressional election is to be worth as much as another's ... and that our Constitution's plain objective [is to make] equal representation for equal numbers of people the fundamental goal.' " Plaintiffs' claim that the Secretary's deci-

sion not to adjust the enumeration results in an undercount and a loss of political representation necessarily arises under Article 1, § 2.

Defendants' quarrel is based on the language of 13 U.S.C. § 141(a), which gives the Commerce Secretary discretion to determine the manner in which the census is conducted. Defendants argue that the Secretary, after considering the relevant alternatives, acted rationally in deciding not to adjust. Transparently, this argument begs the question that plaintiffs raise—whether that decision was rational or whether it was arbitrary and capricious. Having made this challenge, plaintiffs have stated a claim under the Constitution. Whether they ultimately prevail, of course, is a matter that cannot be resolved now.

Accordingly, defendants' motion to dismiss the Complaint and their motion for summary judgment are hereby denied. Plaintiffs may renew their motion for a preliminary injunction upon the completion of discovery.

SO ORDERED.