204 F.3d 413 (2nd Cir. 2000)
 STATE OF CONNECTICUT, Plaintiff-Appellant,
v.
UNITED STATES DEPARTMENT OF COMMERCE, William M. Daley, Secretary, Defendant-Appellee,
STATE OF NEW JERSEY and STATE OF RHODE ISLAND, DEPARTMENT OF ENVIRONMENTAL MANAGEMENT, Movants.
 Docket No. 99-6170
August Term, 1999
 UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
 Argued: February 11, 2000
Decided: February 25, 2000
 
 Appeal from the grant of summary judgment by the U.S. District Court for the District of Connecticut (Christopher F. Droney, Judge) in favor of Secretary Daley, finding that his denial of Connecticut's petition for rulemaking was neither arbitrary nor capricious, and was consistent with all relevant law.
 Affirmed.
 RICHARD BLUMENTHAL, Attorney General of Connecticut (Judith A. Merrill, Assistant Attorney General) for Plaintiff-Appellant.
 JAMES F. SIMON, U.S. Department of Justice, Environment & Natural Resources Division, Washington, DC (Lois J. Schiffer, Assistant Attorney General, John A. Bryson, Mark A. Brown, and Katherine W. Hazard, U.S. Department of Justice, Environmental & Natural Resources Division, on the brief; Joel MacDonald and Julie A. Williams, Office of General Counsel, NOAA, Resources Division, of counsel) for Defendant-Appellee.
 Before: WALKER, CALABRESI, and KATZMANN, Circuit Judges.
 CALABRESI, Circuit Judge:
 
 
 1
 This case involves the Fishery Management Plan ("FMP") for summer flounder or fluke, as the fish are also called. Fluke are native to the Atlantic Ocean and are found in the greatest numbers between Cape Cod, Massachusetts, and Cape Fear, North Carolina. Over the years, the stock of the fish has decreased, and in response, efforts have been made to conserve and restore the population. One of these measures is the FMP. The FMP, developed by Regional Councils[1] and approved by the Secretary of Commerce under the Magnuson-Stevens Act, 16 U.S.C. 1801-1883, restricts commercial fishing to a certain amount of summer flounder. Because commercial fishing of the flounder takes place in waters subject to federal regulatory jurisdiction as well as in those subject to state regulatory jurisdiction, the FMP, in an effort to create an effective management regime, coordinates both the state and federal regimes. The present FMP includes a state-by-state quota system that allocates a percentage of the total allowable catch to each state along the Atlantic Coast from North Carolina to Maine. See 50 C.F.R. 648.100 (2000). Under this quota system, the amount that may be landed in any given state is based on the landings in that state from 1980 to 1989. See Decision on Petition for Rulemaking for Redistribution of the Summer Flounder Quota, 63 Fed. Reg. 2651, 2652 (1998).
 
 
 2
 In April 1997, the State of Connecticut filed a petition for rulemaking, asking the Secretary of Commerce, William M. Daley, to replace the state-by-state quota system with a coast-wide system, which would, in Connecticut's view, be more equitable. Connecticut also proposed that if the Secretary decided to keep a state-by-state quota system, data from the years 1990 to 1992 rather than data from 1980 to 1989 should be used to determine the quotas. Connecticut argued that use of the 1980-1989 data was unfair because it failed to take account of the fact that Connecticut (as well as other northern states) had early on instituted significant minimum length requirements for fish landed in Connecticut. Connecticut believes that these minimum requirements caused fewer fish to be landed at its ports and that, as a result, the current quota system - based, as it is, on those numbers - unfairly punishes Connecticut for its conservation measures.
 
 
 3
 After providing an explanation of the issues and responding to the comments that had been submitted regarding Connecticut's request, the Secretary denied Connecticut's petition. See Decision on Petition for Rulemaking for Redistribution of the Summer Flounder Quota, 63 Fed. Reg. 2651. Connecticut, both in its role as parens patriae representing the economic and social interests of the people of Connecticut and in its own right (since the current system allegedly deprives it of revenue), filed a petition for review of the Secretary's decision in the district court.[2]See 16 U.S.C. 1861(d) (granting exclusive jurisdiction to the district courts for cases arising under the Magnuson-Stevens Act). The district court granted summary judgment in favor of the Secretary, finding that the Secretary did not abuse his discretion or otherwise act improperly when he denied Connecticut's proposed rulemaking.[3] See Connecticut v. Daley, 53 F. Supp. 2d 147 (D. Conn. 1999). Connecticut timely appealed that decision to this court. We affirm the district court's judgment.
 
 I. Connecticut's Administrative Claims
 
 4
 Connecticut claims that the Secretary failed to consider adequately its petition for rulemaking and that his actions therefore violated his duties under the Magnuson-Stevens Act and under the Administrative Procedure Act. Specifically, the State contends (1) that the Secretary did not respond to the merits of Connecticut's petition as he was required to do, (2) that a change in circumstances called into question the continuing validity of the current regulation and that the Secretary had not - as required by law - accounted for the change, and (3) that the Secretary did not reply to the arguments based on the 1990 to 1992 data that was gathered and analyzed in opposition to the quotas the Secretary had affirmed.
 
 
 5
 In its decision, the district court undertook a careful examination of each of Connecticut's claims and rejected them. In the course of its discussion of the issues, however, the district court indicated that, under the Magnuson-Stevens Act, certain duties had been delegated by Congress to Regional Councils and that, as a result, the Secretary did not have the power to take a number of crucial actions with respect to the FMPs. In particular, when considering the Secretary's decision not to begin rulemaking to adopt a coast-wide system to replace the existing state-by-state quotas, the district court stated:
 
 
 6
 The Secretary's view that the FMP amendment process is the proper method of revising the quota system (instead of the Secretary using his own rule making authority) is supported by Congress's delegation of the responsibility for developing fishery quotas to the Council. Congress made it clear in the MagnusonStevens Act that the Secretary may not amend an FMP to establish a limited access system unless it is first approved by a majority of the appropriate Council. 16 U.S.C. 1854(c)(3). Delegation of this authority to the Council shows Congress's preference to have the Council, with its recognized expertise and required representation of various interests, see 16 U.S.C. 1852(b)(1), (2) (providing for a mix of Council members taken from the member states who have occupational experience, or scientific expertise or training, and who are knowledgeable regarding conservation and management, or the commercial or recreational harvest, of the fishery), creating quota management systems for fisheries, not the Secretary alone. The Secretary's role in the process is to ensure that any amendment to the FMP concerning a limited access system is consistent with the MagnusonStevens Act, the National Standards, and other applicable laws. So long as the statebystate quota management system approved by the Council and Commission is consistent with the National Standards and other applicable law, the Secretary may not replace it with an alternative he prepares on his own.
 
 
 7
 Id. at 164-65. And the footnote following this passage asserted:
 
 
 8
 To the extent Connecticut's petition for rule making can be interpreted as a request to have the Secretary repeal or revoke the summer flounder FMP, a threequarters majority of the voting members on the Council would be needed before the Secretary could take such action. See 16 U.S.C. 1854(h).
 
 
 9
 Id. at 165 n.19. This discussion, however, was in addition to and independent of the district court's finding that the Secretary's decision was well-supported by the administrative record and was sufficiently justified to withstand judicial review. See id. at 166-67.
 
 
 10
 At oral argument, the Secretary, though conceding that he may have to some degree contributed to this interpretation of the statute, argues that the discussion of the delegation of powers to Regional Councils under the Magnuson-Stevens Act was unnecessary to the result reached by the district court. We agree, and therefore decline to express a view either way on the delegation issue. Since the reasons provided by the district court in the other portions of its opinion are more than adequate to support the result the court reached, we affirm the district court's decision upholding the Secretary's denial of Connecticut's request substantially for those reasons.[4]
 
 II. Constitutional Claims
 
 11
 In part, but not only, because of this superfluous interpretation of the statute, Connecticut now asserts, for the first time, important constitutional challenges to the validity of the Magnuson-Stevens Act. Connecticut contends that these claims are sufficiently important to justify a deviation from our usual practice of not reaching questions that are not raised below, and it urges us to consider these difficult questions without the benefit of findings by the district court. See, e.g., Vintero Corp. v. Corporacion Venezolana de Fomento, 675 F.2d 513, 515 (2d Cir. 1982) (stating that normally an appellate court will not reach issues raised for the first time on appeal).
 
 
 12
 The Secretary, on the other hand, asks us to decline to discuss these claims. In addition, he contests, on a number of grounds, Connecticut's standing to raise many of the constitutional challenges. And the Secretary submits that, as to some of those challenges, there are significant factual questions that must be resolved before a court can determine Connecticut's standing.
 
 
 13
 We appreciate Connecticut's reasons for wanting the constitutionality of the statute to be evaluated at this time. But we believe that any such immediate consideration would make difficult an adequate treatment of the complex questions at stake and hence would not be in the best interest of the parties or of the administration of justice. To the extent that Connecticut's arguments depend on a reading of the statute that we find unnecessary to the district court's result, the State's claims are premature. And to the extent that the standing issues at stake involve factual determinations, we are necessarily handicapped by not having full findings as to these facts from the district court.
 
 
 14
 It is true, of course, that some of Connecticut's constitutional arguments neither depend on the statutory interpretation that we do not today make, nor involve factual questions with respect to standing. They could, therefore, be considered directly on appeal without creating special problems. But we think that appropriate attention can best be given even to these contentions if they are taken up together with the claims that we either cannot as a practical matter, or should not, for timeliness reasons, consider now. Accordingly, we decline to express a view on the constitutional challenges that Connecticut has made to the validity of the statute.
 
 
 15
 In doing this, we take note that Connecticut is in no way precluded from raising, in an appropriately made facial challenge to the statute, brought in the district court, any of the constitutional claims we opt not to consider today. This is so for two independent reasons. First, the statute applies to a number of regulatory actions other than those involved in this case, a fact that makes the application of res judicata to any such challenge extremely dubious. Cf. SEC v. First Jersey Secs., Inc., 101 F.3d 1450, 1463-64 (2d Cir. 1996) ("A first judgment will generally have preclusive effect only where the transaction or connected series of transactions at issue in both suits is the same, that is where the same evidence is needed to support both claims, and where the facts essential to the second were present in the first. If the second litigation involved different transactions, and especially subsequent transactions, there generally is no claim preclusion." (internal quotation marks, brackets, and citations omitted)). Second, the Secretary, by asking us to postpone consideration of the constitutional issues to a later time, has, we conclude, waived whatever arguments in favor of preclusion might exist. Cf. Johnson v. De Grandy, 512 U.S. 997, 1004-05 (1994) (finding no preclusion where the first court had expressly stated that, with respect to the claims at issue, its ruling would have no preclusive effect under state law).
 
 
 16
 Should such a facial challenge be made, the district court would be able to evaluate the standing questions involved and make the factual findings necessary to a determination of some of them. It would also, with the benefit of full briefing, including that of relevant friends of the court, be able to treat in a coherent and complete way the fundamental and important issues raised by Connecticut.
 
 Conclusion
 
 17
 Accordingly, and confident that, despite the arguments for doing otherwise, this is one of those occasions when not deciding is deciding best, we decline to consider Connecticut's constitutional claims and express no view on any of them, and we AFFIRM the district court's judgment that the Secretary's denial of Connecticut's proposed rulemaking was neither arbitrary or capricious nor inconsistent with the relevant laws or regulations.
 
 
 
 Notes:
 
 
 [1]
 The Magnuson-Stevens Act requires the establishment of eight Regional Councils consisting of members that, inter alia, are knowledgeable of the fishery resources in their geographic area. See 16 U.S.C. 1852. The Councils draft an FMP for each fishery within their jurisdiction, see id. 1853, and then submit the FMP to the Secretary for approval, see id. 1854. The Councils are also responsible for submitting amendments to any FMP to the Secretary. See id.
 
 
 [2]
 We agree that Connecticut has sufficient interest in its own right based on its allegation of lost revenue to have standing to challenge the Secretary's action. See, e.g., Carey v. Klutznick, 637 F.2d 834, 838 (2d Cir. 1980). We therefore need not consider whether it would also have standing as parens patriae. See, e.g., Massachusetts v. Mellon, 262 U.S. 447, 485-86 (1923).
 
 
 [3]
 Connecticut actually filed two lawsuits in the district court. These were consolidated and decided together. Only one of the actions has been appealed.
 
 
 [4]
 In this respect, we note that the district court expressly found that the Secretary's decision not to use the 1990-1992 data as proposed by Connecticut was amply supported by the administrative record and fully explained in the Secretary's decision. See Connecticut v. Daley, 53 F. Supp. 2d at 167-69. Specifically, the district court concluded that, because "Connecticut's petition only gave the Secretary the option of choosing between a ten year period and a three year period[,] . . . the Secretary's decision to maintain the ten year period cannot be considered arbitrary or capricious." Id. at 169.