PEOPLE OF the STATE OF ILLINOIS ex rel. William J. SCOTT, Attorney General of the State of Illinois, Plaintiff,

v.

Moon LANDRIEU, Secretary of the United States Department of Housing and Urban Development, Defendant.

No. 80 C 583.

United States District Court, N. D. Illinois, E. D.

Nov. 10, 1980.

William J. Scott, Atty. Gen., State of Ill., John Van Vranken, Dean Hansell, Anne L. Rapkin, Environmental Control Div., Chicago, Ill., for plaintiff.

Griffin B. Bell, U. S. Atty., Dennis G. Linder, Alphonse M. Alfano, Barbara S. Woodall, Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

William J. Scott, former Attorney General of the State of Illinois, filed this action on behalf of the People of the State of Illinois and (by way of Amended Complaint) on behalf of the State itself [1] against Secretary Moon Landrieu ("Landrieu" or the "Secretary") [2] of the United States Department of Housing and Urban Develop-

ment ("HUD") to require Landrieu to promulgate certain solar heating and cooling technology regulations under 42 U.S.C. § 5506. Landrieu filed a motion to dismiss or in the alternative for summary judgment. Illinois has also filed a motion for summary judgment. For the reasons stated in this memorandum opinion and order, Landrieu's motion to dismiss is granted and Illinois' motion for summary judgment is denied.

### Facts

On September 3, 1974 the Solar Heating and Cooling Demonstration Act of 1974, 42 U.S.C. § 5501 *et seq.* (the "Act"), was enacted. Its stated purpose was "to provide for the demonstration within a three–year period of the practical use of solar heating technology, and to provide for the development and demonstration within a five–year period of the practical use of combined solar heating and cooling technology." 42 U.S.C. § 5501(b). Under the Act, the Secretary is required to:

1. promulgate interim performance criteria for both solar heating and cooling components to be used in residential dwellings "as soon as possible after September 3, 1974" (42 U.S.C. § 5504, 5505);

2. establish demonstration programs in which solar heating and cooling systems are to be installed in a number of buildings and monitored over a five–year period (42 U.S.C. §§ 5503(d), 5504(e)); and

3. "as soon as feasible, and utilizing data available from the [above] demonstration programs ... determine, prescribe and publish in the Federal Register in accordance with the applicable provisions regarding rulemaking ... (1) definitive performance criteria for solar heating and cooling components and systems to be used in

---

1. Unless the context indicates otherwise, "Illinois" will refer to the State in both capacities.

2. At the time Landrieu filed his Motion to Dismiss, Illinois had brought suit against him in both his individual and representative capaci-

ties. In view of the authorities adduced by Landrieu as to the absence of individual liability, Illinois has amended its complaint to delete allegations against Landrieu individually.

residential dwellings ... [and] (3) procedures whereby manufacturers of solar heating and combined solar heating and cooling components and systems shall have their products tested in order to provide certification that such products conform to the performance criteria established under paragraph (1)" (42 U.S.C. § 5506).

HUD has not yet published definitive performance criteria and certification procedures ("regulations"). Illinois alleges that its failure to do so violates the Act and requests the Court to issue a writ of mandamus or a mandatory injunction directing Landrieu to promulgate those regulations within ninety days of the date of judgment.[3] Illinois' claim is predicated on the contention that as major consumers of fuel and energy supplies, both the people and the State of Illinois have been "deprived of an adequate supply of a cheap, viable and environmentally beneficial fuel" by Landrieu's failure to comply with the statute, since promulgation of the regulations would stimulate commercial solar energy development.

Landrieu urges dismissal on two grounds. First he asserts that Illinois lacks standing to bring this action as *parens patriae* on behalf of its citizens and lacks standing to sue on its own behalf under general constitutional principles of standing. Second, Landrieu also claims under Fed.R.Civ.P. 12(b)(6) that Illinois' Amended Complaint fails to state a claim upon which relief can be granted.

### "Standing"-In Two Senses

*Massachusetts v. Mellon*, 262 U.S. 447, 485-86, 43 S.Ct. 597, 600-601, 67 L.Ed. 1078 (1923), is a direct bar to a state's efforts to sue the United States—to act as *parens patriae*—to enforce the rights of its citizens in their relationships with the federal government:

We come next to consider whether the suit may be maintained by the State as the representative of its citizens. To this the answer is not doubtful ... [T]he citizens of Massachusetts are also citizens of the United States. It cannot be conceded that a State, as *parens patriae*, may institute judicial proceedings to protect citizens of the United States from the operation of the statutes thereof. While the State, under some circumstances, may sue in that capacity for the protection of its citizens (*Missouri v. Illinois*, 180 U.S. 208, 241, 21 S.Ct. 331, 343, 45 L.Ed. 497), it is no part of its duty or power to enforce their rights in respect of their relations with the Federal Government. In that field it is the United States, and not the State, which represents them as *parens patriae*, when such representation becomes appropriate; and to the former, and not to the latter, they must look for such protective measures as flow from that status.

Thus as stated in 13 Wright, Miller & Cooper *Federal Practice and Procedure*: Jurisdiction § 3531, at 233 (1975):

It has been clearly ruled that states may not as *parens patriae* assert the rights of their citizens against the federal government, since the federal government itself is the ultimate parent of the country.

■ Unless supervening authority has sapped *Massachusetts v. Mellon* of its force, or unless there is a meaningful distinction between a challenge to the constitutionality of a federal statute (at issue in that case) and a suit to enforce a federal statute (at issue here), this Court is foreclosed from granting relief to Illinois in this action. Neither of those propositions appears clearly sound, and this issue alone would be dispositive of one aspect of Illinois' claimed standing to sue.

Similarly, *Warth v. Seldin*, 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975), and its progeny (most recently *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 100, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66 (1979)) stand squarely in the path of

---

**3.** At the time Landrieu filed his Motion in this action, Illinois' Complaint also alleged violations of Sections 5503(d) and 5504(e). Those allegations are omitted from the since-filed Amended Complaint.'

Illinois' claim on its own behalf in its proprietary capacity as a "major consumer of fuel and energy supplies." That line of authority teaches as a general matter of standing "that when the asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction." It also requires that a plaintiff must be asserting its own legal rights and not those of third parties. Illinois has wholly failed to demonstrate that it has been injured in a particular manner, as contemplated by the first of these principles, or that there is a nexus between Illinois' own use of fuel and energy supply and the *residential dwellings* focus of the statute, as must be present to meet the second.

Additionally, *Warth* requires in a constitutional sense—the Article III jurisdictional requirement of a "case or controversy"—that a plaintiff must show that it has suffered a concrete or "distinct and palpable injury" and that there is "a fairly traceable causal connection between the claimed injury and the challenged conduct." That test does not appear to be met either, because of the second factor referred to in the preceding paragraph.

It is of course more orderly in the jurisprudential sense to reach and deal dispositively with such issues first, rather than dealing with the merits. But because this Court's action may well be appealed and because Illinois' Amended Complaint so clearly fails on Fed.R.Civ.P. 12(b)(6) grounds, this Court will turn to that subject and dispose of the case on that independent basis.

### Illinois' Failure To State a Cause of Action

To sustain its action Illinois must establish that 42 U.S.C. § 5506 requires the Secretary to promulgate definitive performance criteria and certification procedures for solar heating and cooling systems within a specified period of time now expired. It must do so in the face of the specific language of that provision, which directs promulgation "as soon as feasible" and thus appears not to create the kind of precision—of a *fixed* duty—necessary to support relief in the nature of mandamus.

Illinois argues that the absence of an explicit deadline for promulgation "does not necessarily mean that Congress did not foresee publication within a certain time." Citing passages from the Act's legislative history, it notes that the Act was intended to stimulate widespread commercial application of solar technology "in the shortest time possible." It also points to the declaration of purpose (Section 5501(b)) to provide for the demonstration of the practical use of solar heating technology "within a three–year period" and combined heating and cooling technology "within a five–year period." Illinois contends that Congress intended promulgation of definitive criteria and procedures within those periods, which Illinois claims have now expired. Finally, Illinois asks the Court to construe Section 5506 in light of certain statements made by David Moore, HUD's Program Manager of the Solar Heating and Cooling Demonstration Program, to the effect that the Act required such promulgation by the end of the five–year authorization period set in Section 5501(b).[4]

■ At the outset, Illinois must concede that it urges an unlikely construction of the Act, because none of its provisions sets forth a mandatory date for promulgation of the regulations. "As soon as feasible" is a phrase that in both its legal and common–sense usage (not unlike "with all deliberate speed") very strongly suggests that a *specific* date for accomplishment of a legislative directive has not been mandated. In short, the state's proposed reading of Section 5504 cannot be drawn from the plain language of the Act.

---

4. On this last point, in addition to the broader arguments discussed below, the Secretary argues that the "authorization" period to which Mr. Moore referred was measured from a later date (when grants for solar projects in publicly assisted housing were first made, in 1976). On that basis the five-year period would not yet have expired in any event.

Illinois cites *Natural Resources Defense Council v. Train*, 510 F.2d 692 (D.C.Cir. 1975), for the proposition that "[w]here provision for time of publication is not expressly made in the statute, the court should examine its text and its legislative history to determine Congress' intention." That case involved facts critically different from those in this action and consequently has little precedential value here.[5] Nonetheless the Court has reviewed the pertinent legislative history of the Act cited by Illinois and concludes that Illinois has simply failed to demonstrate that Congress intended to require the Secretary to publish the regulations by a specific date.

■ Illinois' contention is also undermined by the fact that the Act expressly directs the Secretary to take *certain* actions within specified time periods, *including the promulgation of interim regulations for solar heating components* (Section 5503; see also Section 5505). Thus Congress well knew how to designate fixed dates for compliance, and its failure to do the same in Section 5506 negates the inferences Illinois would have this Court draw from other provisions.[6]

Accordingly, this Court concludes that Congress vested the Secretary with broad discretion to determine *feasibility*, thus controlling the determination of when it is "as soon as feasible" to publish the regulations. This Court could therefore properly grant the relief Illinois seeks only if Landrieu's failure to publish to date has been "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law or if the action [or inaction] failed to meet statutory, procedural, or constitutional requirements." *Citizens To Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 414, 91 S.Ct. 814, 822, 28 L.Ed.2d 136 (1971).

■ No such abuse is apparent in this instance. Landrieu has timely promulgated interim performance criteria and has established demonstration programs from which data can be collected for use in developing the definitive regulations. Landrieu has also revised the interim regulations to reflect information acquired from monitoring of early demonstration programs, and is actively testing such programs and consulting with other government agencies in preparation for the eventual adoption of definitive regulations. Moore Declaration ¶ 5. All these actions confirm that the Secretary has exercised and is exercising his discretion in a way that precludes judicial intervention in the nature of mandamus.

### Conclusion

Illinois' motion for summary judgment is denied. Landrieu's motion to dismiss this action is granted for failure to state a cause of action, and this action is dismissed without leave to amend.

5. *Train* involved Section 304(b)(1)(A) of the Water Pollution Control Act Amendments of 1972, which required the Environmental Protection Agency to promulgate effluent limitation guidelines for "classes and categories of point sources" by a definite date. What the Court considered in *Train* was whether regulations were required by that date only for specific point sources listed in Section 306(b)(1)(A) or for those not listed as well. Judge Leventhal invoked the legislative history to conclude the Agency was entitled to promulgate regulations for *non*-listed point sources at its discretion rather than within the statutory timetable.

6. Illinois maintains that the dates set forth in Section 5501(b) apply to publication of the regulations:

It is therefore declared to be the policy of the United States and the purpose of this subchapter to provide for the demonstration within a three–year period of the practical use of solar heating technology, and to provide for the development and demonstration within a five ·year period of the practical use of combined heating and cooling technology.

Section 5501(b), of course, is a declaration of general Congressional policy, while Section 5506 vests the Secretary with discretion in connection with a specific substantive aspect of the Act. Absent any indication that Section 5501(b) was intended to apply in the manner Illinois urges, this Court believes the specific directive is controlling. Moreover, what Section 5501(b)'s declaration calls for is a "development and demonstration" within five years, *not* the regulations that may be drawn from that experience. By its own terms, Section 5506 directs that the regulations be published "utilizing data available from the demonstration programs under Sections 5503 and 5504." Neither of those programs is yet completed.