**PEOPLE of the State of Illinois ex rel. Neil F. HARTIGAN, Attorney General of the State of Illinois, Plaintiff,**

**v.**

**Richard B. CHENEY, Secretary of Defense, Defendant.**

No. 89–3110.

United States District Court,
C.D. Illinois,
Springfield Division.

Dec. 4, 1989.

Shawn W. Denney, First Asst. Atty. Gen., State of Ill., Springfield, Ill., for plaintiff.

J. William Roberts, U.S. Atty., Springfield, Ill., David J. Anderson, Vincent M. Garvey, Jeffrey S. Gutman, Dept. of Justice, Civil Div., Washington, D.C., for defendant.

## OPINION

RICHARD MILLS, District Judge:

Before the Court is an issue of dire import to a great many people on the Prairie of Illinois—the impending closure of Chanute Air Force Base and the Army's Fort Sheridan.

The State of Illinois, by its Attorney General, seeks a declaratory judgment that the Defense Authorization Amendments and Base Closure and Realignment Act violates various provisions of the United States Constitution as well as the Administrative Procedure Act.

Illinois brought this action, in part, due to the certain emotional trauma that will be suffered, and the fear that economic hardship will be suffered, by the citizens living near these military installations, especially the people in and around Rantoul, Champaign County, Illinois. The Court explicitly recognizes their plight and implicitly sympathizes with their resulting loss. Since Chanute AFB is located in this district, it is doubtful that the State of Illinois could find a more favorable forum than this Court. But receptive as the forum may be, the Court is yet bound by the provisions of the Constitution. Federal courts are courts of limited jurisdiction. This Court is limited to deciding actual cases or controversies. We must find that the complaint filed in this cause does not satisfy that requirement.

Count I of the complaint alleges that the Act violates Article II, section II, cl. 1, of the Constitution stating that "the president shall be commander in chief of the army and navy of the United States...." Plaintiff asserts that the Act requires the Secretary of Defense (Secretary) to accept or reject *in toto* the findings of the Defense Secretary's Commission on Base Realignment and Closure (Commission). This, Plaintiff asserts, undermines the independent exercise by the executive branch of its constitutional power to command the armed forces.

In Count II, Plaintiff again asserts that the Act violates Article II, section II, cl. 1. Plaintiff asserts that the Act usurps the power of the executive branch to control and deploy the armed forces by delegating that power to a non-governmental body with total discretion to re-deploy the armed forces.

Plaintiff asserts in Count III that the Act violates Article I, section VIII, cl. 1, which grants Congress the power to provide for the common defense. The Act violates this provision of the Constitution, Plaintiff asserts, by delegating to a non-governmental body the responsibility for ascertaining the requisites for the common defense without providing sufficient delimiting criteria.

Plaintiff alleges in Count IV that the Act violates Article I, section VII, cls. 2 and 3, the so-called presentment clauses. The Act provides that the directives of the Commission become law and the Secretary becomes obligated to implement them unless Congress enacts a joint resolution of disapproval within 45 legislative days. This violates Article I, section VII, cls. 2 and 3, Plaintiff asserts, because the directives of the Commission are given the force and effect of law without having been presented to the president.

For the final salvo, Plaintiff alleges that the Secretary's approval of the Commission's recommendations violated the provisions of the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.* Plaintiff asserts that the Secretary acted in an arbitrary and capricious manner constituting an abuse of discretion in approving the Commission's report because the Commission relied on inaccurate and inadequate information in formulating the report.

We find it unnecessary to reach the merits of any of Plaintiff's contentions. The Court must conclude that Plaintiff does not have standing to proceed with this suit. Thus, Defendant's motion to dismiss will be allowed.

## I—FACTS

On May 3, 1988, then Secretary of Defense Frank Carlucci (the Secretary) chartered the Defense Secretary's Commission on Base Realignment and Closure (the Commission), an advisory commission established pursuant to the Federal Advisory Committee Act, as amended, 5 U.S.C. App. II. Some of the functions of the Commission were to study the issues surrounding military base realignment and closure within the United States, determine the best process for identifying bases to be closed or realigned, determine the criteria for realigning and closing bases, and determine how to improve and best use federal government incentive programs to overcome the negative impact of base closure or realignment. Charter of Defense Secretary's Commission on Base Realignment and Closure § 2.

Effective October 24, 1988, Congress enacted the Defense Authorization Amendments and Base Closure and Realignment Act, Pub.L. No. 100–526, 102 Stat. 2623 (1988) (the Act). Section 201 of the Act requires the Secretary to close all military installations recommended for foreclosure by the Commission in the report transmitted to the Secretary pursuant to the charter establishing the Commission. *Id.* That section also requires the Secretary to realign all military installations recommended for realignment by the Commission in its report. *Id.*

On December 29, 1988, the Commission presented its report to the Secretary of Defense. The report detailed 86 military installations that the Commission recommended be closed fully, 5 installations the Commission recommended be closed in part, and 54 installations the Commission recommended be realigned. Two of the installations to be completely closed are located in Illinois and are the subject of this lawsuit. Those installations are Fort Sheridan, located in Lake County, and Chanute Air Force Base, located in Champaign County.

Pursuant to section 202(a)(1) of the Act, the Secretary could not carry out any closure or realignment of an installation unless he transmitted to the committees on armed services of the Senate and the House of Representatives a report containing a statement that the Secretary approved all the recommended closures and realignments. The Secretary reported his approval of all the closure and realignment recommendations on January 8, 1989.

Section 202(b) of the Act further provides that the Secretary may not carry out any closure or realignment if, within 45 legislative days after March 1, 1989, Congress enacted a joint resolution disapproving the recommendations of the Commission. Congress did not enact such a resolution.

This lawsuit was filed on May 11, 1989. The Plaintiff is the State of Illinois by its Attorney General. The complaint seeks a declaratory judgment that the Act violates several provisions of the Constitution, a declaratory judgment that the Secretary's approval of the Commission's recommendations was an abuse of discretion, and an injunction to prevent the Secretary from implementing any closures or realignments of military installations pursuant to the Act.

Defendant moved to dismiss on July 10, 1989. That motion is now before the Court.

## II—ANALYSIS

Defendant has moved to dismiss asserting five grounds. Because the Court agrees with Defendant's position that Plaintiff does not possess standing, the Court will not address Defendant's other arguments.

A. Standing to Sue *Parens Patriae* on Behalf of the Citizens of Illinois

■ Defendant first asserts that Plaintiff cannot bring this action as *parens pat-*

222

*riae* on behalf of the people of Illinois. This assertion is correct.

 *Parens patriae* literally means "parent of the country" and traditionally refers to the role of the state as sovereign and guardian of persons under legal disability. Black's Law Dictionary 1003 (5th ed. 1979). As the concept has developed in American law, however, a *parens patriae* action no longer deals with the state stepping in to represent the interests of citizens who cannot represent themselves because they are under a disability. Rather, a *parens patriae* action will lie when the state seeks to protect a set of interests that it has in the well-being of its populace. *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 603, 102 S.Ct. 3260, 3266, 73 L.Ed.2d 995 (1982). These interests have been denominated as quasi-sovereign.

There is no concrete definition of those quasi-sovereign interests that will give rise to a *parens patriae* action on the part of the state. Neither must this Court attempt such a definition for we find that whatever interest Illinois could articulate, its *parens patriae* action against the federal government is barred by *Massachusetts v. Mellon*, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078 (1923), and its progeny.

*Mellon* involved a suit by the Commonwealth of Massachusetts for itself and as *parens patriae* on behalf of its citizens against the Secretary of the Treasury to enjoin the operation of a federal statute on grounds that it was unconstitutional. In holding that Massachusetts did not have standing as *parens patriae*, the Court stated:

> It cannot be conceded that a state, as *parens patriae*, may institute judicial proceedings to protect citizens of the United States from the operation of the statutes thereof. While the state, under some circumstances, may sue in that capacity for the protection of its citizens (citation omitted), it is no part of its duty or power to enforce their rights in respect of their relations with the federal government. In that field it is the United States, and not the state, which repre-

sents them as *parens patriae* ... and to the former, and not the latter, they must look for such protective measures as flow from that status.

*Id.* at 485–86, 43 S.Ct. at 600. In this case, as in *Mellon*, it would appear that the state does not have standing as *parens patriae* to sue to protect its citizens from an allegedly unconstitutional federal statute.

Plaintiff asserts that *Mellon* did not establish a *per se* rule barring all suits by a state, as *parens patriae*, against the federal government to protect its citizens against any form of enforcement of allegedly unconstitutional acts of Congress. It is true that *Mellon* contains language that is susceptible of such a reading. For example, the Court stated, "We need not go so far as to say that a state may never intervene by suit to protect its citizens against any form of enforcement of unconstitutional acts of Congress...." *Massachusetts v. Mellon*, 262 U.S. at 485, 43 S.Ct. at 600. Plaintiff also relies on *Massachusetts v. Laird*, 400 U.S. 886, 91 S.Ct. 128, 27 L.Ed.2d 140 (1970) (Douglas, J., dissenting from denial of leave to file bill of complaint). In his dissent, Justice Douglas, relying on the language just quoted, stated that *Mellon* did not announce a *per se* rule barring all suits by a state, as *parens patriae*, against the federal government.

Any confusion as to whether a state has standing, as *parens patriae*, to sue the federal government was cleared up by the Court in *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 610 n. 16, 102 S.Ct. 3260, 3270 n. 16, 73 L.Ed.2d 995 (1982). In that case, the Supreme Court stated unequivocally that a state does not have standing as *parens patriae* to bring an action against the federal government. In *Alfred L. Snapp & Son, Inc.*, the Court found that the Commonwealth of Puerto Rico had standing as *parens patriae* to sue for violations of the Wagner–Peyser Act and the Immigration and Nationality Act of 1952. The Court noted, however, that Puerto Rico sought to secure the federally created rights of its residents against private defendants.

As to Plaintiff's reliance on *Massachusetts v. Laird,* suffice it to say that Justice Douglas' view was expressed in a dissent from a denial of leave to file a bill of complaint. That is not sufficient authority to support Plaintiff's position.

The view of *parens patriae* actions that the Court adopts today was also adopted by another district court in this circuit. *Illinois ex rel. Scott v. Landrieu,* 500 F.Supp. 826 (N.D.Ill.1980), involved a suit by the Attorney General of Illinois, on behalf of the people of Illinois, to require the Secretary of the United States Department of Housing and Urban Development to promulgate certain solar heating and cooling technology regulations under 42 U.S.C. § 5506. The court relied on *Mellon* in finding that Illinois did not have standing to sue as *parens patriae.*

In the alternative, Plaintiff requests that this Court reverse the rule disallowing states to bring an action, as *parens patriae,* against the federal government and allow Plaintiff to continue this action as *parens patriae.* This is an untenable request. Would Plaintiff have this federal trial court reverse a rule established by the Supreme Court of the United States over 65 years ago? As Plaintiff must be well aware, this Court does not have that power. Only the court of last resort may overrule one of its own precedents. *Thurston Motor Lines v. Jordan K. Rand, Ltd.,* 460 U.S. 533, 535, 103 S.Ct. 1343, 1344, 75 L.Ed.2d 260 (1983) (per curiam).

**B. The State's Standing to Sue On Its Own Behalf**

Illinois also attempts to sue on its own behalf. Illinois alleges that the closure of Chanute Air Force Base and Fort Sheridan will cause massive economic injury to the State of Illinois. These injuries include the loss of state revenue due to unemployment and population loss, increased spending by the state on such programs as unemployment compensation benefits and public assistance, and a loss of federal revenue attributable to the closure of the bases.

Plaintiff has submitted two reports addressing the effect the closing of Chanute Air Force Base will have on the village of Rantoul, Illinois. These reports detail several ways Rantoul's economy will allegedly be affected including loss of employment, loss of population, loss of business volume, and loss of tax revenue. Plaintiff has also submitted the affidavit of Walter W. McMahon, a Professor of Economics at the University of Illinois. Professor McMahon states that he has completed an economic study which involves estimating the present cash value of the costs to the State of Illinois which will result from the closure of Chanute Air Force Base and Fort Sheridan. Professor McMahon states that he estimates that the State of Illinois will suffer a loss of revenue amounting to $136,428,705.00 as a result of the closure of Chanute Air Force Base and Ft. Sheridan. Professor McMahon further states that he estimates that the State of Illinois will have to spend an additional $103,045,757.00 for retraining programs and business incentives that the State would not be required to spend if Chanute Air Force Base and Ft. Sheridan were not closed.

A plaintiff in a federal court must satisfy constitutional requirements and prudential considerations in order to show standing to proceed with a suit. *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.,* 454 U.S. 464, 471, 102 S.Ct. 752, 757, 70 L.Ed.2d 700 (1982). As relates to the constitutional requirements, Article III of the Constitution limits federal court jurisdiction to actual cases or controversies. *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 37, 96 S.Ct. 1917, 1923, 48 L.Ed.2d 450 (1976). A plaintiff must allege such a "personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of the issues." *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). In order to demonstrate a personal stake in the outcome, the plaintiff must satisfy three requirements. First, the plaintiff must show that he has suffered some threatened or actual injury in fact. *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 804, 105 S.Ct. 2965, 2970, 86 L.Ed.2d 628 (1985); *Warth v. Seldin,* 422

U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). Second, the plaintiff must show that there is a fairly traceable causal connection between the injury and the conduct of the defendant. *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. at 472, 102 S.Ct. at 758; *Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 72, 98 S.Ct. 2620, 2629, 57 L.Ed.2d 595 (1978). Third, the plaintiff must demonstrate that the injury is likely to be redressed by the requested judicial relief. *Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984); *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. at 38, 96 S.Ct. at 1924.

■ In addition to satisfying the constitutional requirements of injury in fact, fairly traceable causal connection, and redressability, a plaintiff must also satisfy several prudential considerations. These prudential considerations have been developed because "the judiciary seeks to avoid deciding questions of broad social import where no individual rights would be vindicated and to limit access to the federal courts to those litigants best suited to assert a particular claim." *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 99–100, 99 S.Ct. 1601, 1607–08, 60 L.Ed.2d 66 (1979). To effectuate these ends, courts have developed the limitation that a litigant must normally assert his own legal interests rather than those of third parties. *Singleton v. Wulff*, 428 U.S. 106, 114, 96 S.Ct. 2868, 2874, 49 L.Ed.2d 826 (1976); *Craig v. Boren*, 429 U.S. 190, 193–195, 97 S.Ct. 451, 454–55, 50 L.Ed.2d 397 (1976). Second, where the asserted harm is a generalized grievance shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction. *Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974); *United States v. Richardson*, 418 U.S. 166, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974); *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Finally, courts require that the plaintiff's complaint fall within "the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Association of Data Processing Service Organizations v. Camp*, 397 U.S. 150, 153, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970).

■ The Court finds that Illinois cannot demonstrate injury or the threat of injury in fact and that even if Plaintiff could meet that requirement such injuries would be generalized grievances, shared in substantially equal amount by each citizen of Illinois. Furthermore, the complaint does not fall within the zone of interests to be protected by the statute. Thus, the Plaintiff state does not possess standing and Defendant's motion to dismiss must be allowed.

### 1. *Injury in Fact*

#### a. Injury to State *qua* State

■ "At an irreducible minimum," one seeking protection in federal court must "show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant...." *Valley Forge*, 454 U.S. at 472, 102 S.Ct. at 758. The injury need not be large, an "identifiable trifle" will do. *U.S. v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 689 n. 14, 93 S.Ct. 2405, 2417 n. 14, 37 L.Ed.2d 254 (1973). Thus, it is clear that it is not the quantity of injury that will confer standing on a plaintiff but the quality of the injury. A minor injury will give rise to standing if it affects the plaintiff personally. Conversely, even a very large injury will not give the plaintiff standing if it does not personally affect the plaintiff. "To attain standing in federal district court, the plaintiff need not only have sustained an injury, but an injury *personal* to it." *Frank Rosenberg, Inc. v. Tazewell County*, 882 F.2d 1165, 1168 (7th Cir.1989) (emphasis original).

Plaintiff asserts that, if the two military installations at issue are closed, Plaintiff will be injured through the loss of state tax revenue, loss of federal funds, and increased spending on social programs such as unemployment compensation and public

assistance. Assuming, *arguendo*, that these injuries will occur, the harm will fall on the taxpayers and citizens of Illinois and not on the state *qua* state. Decreased state revenue and increased social service obligations will result in either increased taxes or cuts in social welfare programs, or both. It is the citizens and taxpayers of Illinois that will suffer if this comes about, not the state as a state.

Allegations similar to those made by Plaintiff were made by the plaintiff in *Iowa ex rel. Miller v. Block*, 771 F.2d 347 (8th Cir.1985), *cert. denied*, 478 U.S. 1012, 106 S.Ct. 3312, 3313, 92 L.Ed.2d 725 (1986). Iowa alleged that the Department of Agriculture's failure to provide disaster relief funds would result in decreased agricultural production and decreased state tax revenues. The Eighth Circuit held that the injuries alleged were so far removed from the alleged wrongful conduct as to not constitute injury to the state. *Id.* at 353.

Plaintiff cites *Chiles v. Thornburgh*, 865 F.2d 1197 (11th Cir.1989), to support its assertion of standing. In *Chiles*, a U.S. Senator brought an action against the U.S. Attorney General alleging that the federal government was operating an illegal detention center in Dade County, Florida. Dade County and the governor of Florida were allowed to intervene and file complaints. The Eleventh Circuit held that Dade County had standing to sue because the county had been forced to supply additional police and emergency personnel due to riots and escapes at the detention center. The Court also stated that a state has standing to sue in its sovereign capacity when it has suffered an economic injury but that Florida had not shown any economic injury.

We find *Chiles* to be distinguishable from the case at bar. The injury alleged by Dade County had a more direct causal connection than that alleged by the Plaintiff in this case. Furthermore, Plaintiff's citation of the Court's statement that a state has standing to sue when it has suffered economic injury merely begs the question. The issue is whether Illinois has shown that it will suffer economic injury as

a state. We find that it has not made that requisite showing.

### b. Speculative Nature

Plaintiff has alleged various economic injuries that will occur if Chanute Air Force Base and Fort Sheridan are closed. These include loss of state revenue due to increased unemployment and population loss, increased state spending on programs such as unemployment compensation and public assistance, and loss of federal revenue. These are not the types of real and immediate injuries or threats of injuries that will confer standing on a plaintiff. The injuries alleged by Plaintiff are merely conjectural and speculative. Furthermore, section 204(a)(2) of the Act that Plaintiff would have this Court hold unconstitutional provides that, subject to the availability of funds, the Department of Defense shall provide economic adjustment assistance to any community located near an installation if the Secretary determines that the funds available to the community are inadequate. Pub.L. No. 100–526, 102 Stat. 2623 (1988). This will work to alleviate those economic injuries that Plaintiff asserts will occur.

Plaintiff asserts that one can reverse Defendant's argument that the harms of which Plaintiff complains are speculative and claims that it is entirely speculative and conjectural to assert that the federal economic adjustment program will relieve the economic displacement Illinois will experience. This argument is unavailing. Plaintiff has the burden of showing standing, and Defendant is not required to show that Plaintiff does not have standing.

### 2. *Generalized Grievances*

Even were this Court to find that Plaintiff could demonstrate injury in fact, the Court would still allow Defendant's motion to dismiss. Plaintiff asserts the type of generalized grievance, shared in substantially equal measure by a large class of citizens, that does not warrant exercise of jurisdiction. In this respect, the case before us is similar to *Iowa ex rel. Miller v. Block*, 771 F.2d 347 (8th Cir.1985), and *Pennsylvania v. Kleppe*, 533 F.2d 668 (D.C.Cir.), *cert. denied*, 429 U.S. 977, 97 S.Ct. 485, 50 L.Ed.2d 584 (1976).

*Block* involved a suit by the State of Iowa to force the Secretary of Agriculture to implement certain federal relief programs. A drought had decreased farm output in Iowa and many farmers were experiencing financial difficulty. The governor of Iowa requested that the Secretary of Agriculture implement the Special Disaster Payment Program, the Livestock Feed Program, and the Emergency Feed Program to mitigate the problem. The Secretary of Agriculture refused assistance under the programs and the State of Iowa filed an action in the United States District Court for the District of Iowa seeking an injunction to compel the Secretary to implement the programs.

Iowa alleged that, but for the Secretary's implementation of the disaster relief programs, agricultural production would suffer, agriculturally based industries would be dislocated, unemployment would increase, and state tax revenues would decrease. The state alleged that, as a result, it would face increased responsibility for the welfare and support of its citizens.

The United States Court of Appeals for the Eighth Circuit agreed with the district court's finding that the injuries alleged were "generalized grievances, shared by each citizen of Iowa" and that the injuries failed to constitute distinct, palpable injuries to the state as a state. *Block*, 771 F.2d at 353. The Eighth Circuit further stated that "the unavoidable economic repercussions of virtually all federal policies, and the nature of the federal union as embodying a division of national and state powers, suggest to us that impairment of state tax revenues should not, in general, be recognized as sufficient injury in fact to support state standing." *Block*, 771 F.2d at 354 (quoting *Pennsylvania v. Kleppe*, 533 F.2d 668, 672 (D.C.Cir.), *cert. denied*, 429 U.S. 977, 97 S.Ct. 485, 50 L.Ed.2d 584 (1976)).

*Kleppe* involved a suit by Pennsylvania challenging the Small Business Administration's failure allegedly to provide sufficient disaster relief following a hurricane. The state alleged that it suffered harm by injury to the economy, health, safety, and welfare of its people, by impairment of its ability to look after the well being of its citizens, and by reduction of state tax revenues.

The D.C. Circuit affirmed the district court's dismissal of the action on the ground that the plaintiff lacked standing to sue. The Court concluded that the alleged injuries did not satisfy the requirement of being arguably within the zone of interests protected by the Small Business Act and that the plaintiff had not made sufficient allegations of injury in fact. *Kleppe*, 533 F.2d at 672. The Court further stated that an allegation of diminution of state tax revenue does not constitute sufficient injury to state proprietary interests to confer standing. *Id.* at 672–73.

In this cause, as in *Block* and *Kleppe*, a state brings suit alleging injury by way of decreased state tax revenues and increased spending on social welfare programs. Unlike this case, *Block* and *Kleppe* both involved a state's attempt to force the federal government to act. Here, Illinois is attempting to enjoin the federal government from acting to close Chanute Air Force Base and Fort Sheridan. We find this difference to be of no moment. Illinois, as did Iowa and Pennsylvania, alleges the sort of generalized grievance that does not give rise to standing.

Plaintiff relies in large part on *Carey v. Klutznick*, 637 F.2d 834 (2d Cir.1980), to support its assertion of standing. That case involved a claim by the State of New York that the manner in which the 1980 census was conducted led to an undercount in certain areas. The court held that plaintiff had alleged concrete harm in the form of dilution of voting power and loss of federal funds. *Id.* at 838.

*Carey v. Klutznick*, however, is distinguishable from the case at bar. The plaintiffs in *Carey* alleged a much more direct injury than that alleged by Plaintiffs in this case. In *Carey*, the census undercount led directly to the state not receiving as large an amount of federal funds through revenue sharing. In addition, the court based its finding of standing, at least in part, on the dilution of voting power. Finally, the court stated that the State of New York had standing in its capacity as *parens pat-*

*riae* but did not discuss *Massachusetts v. Mellon,* 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078 (1923).

### 3. *Zone of Interests*

Finally, the Court finds that Plaintiff does not fall within the zone of interests to be protected or regulated by the statute in question. In Count V, Illinois alleges that the Secretary's approval of the Commission's recommendations violated the Administrative Procedure Act. In Illinois' view, the Secretary acted in an arbitrary and capricious manner in approving the Commission's recommendations because the Commission relied on inaccurate and inadequate information.

The APA gives a right of judicial review only to those plaintiffs suffering legal wrong because of agency action or adversely affected or aggrieved by agency action within the meaning of a relevant statute. 5 U.S.C. § 702. In addition, a plaintiff asserting an APA claim must show that "the interest sought to be protected by the complaintant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Association of Data Processing Service Organizations v. Camp,* 397 U.S. 150, 153, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970).

The purpose of the zone of interests test is to "exclude those plaintiffs whose suits are more likely to frustrate rather than to further statutory objectives." *Clarke v. Securities Industry Association,* 479 U.S. 388, 397 n. 12, 107 S.Ct. 750, 756 n. 12, 93 L.Ed.2d 757 (1987). To satisfy the test the plaintiff must "assert[ ] some interest that has a 'plausible relationship' to at least one of the concerns that actually motivated Congress to take legislative action." *City of Milwaukee v. Block,* 823 F.2d 1158, 1166 (7th Cir.1987). Where the plaintiff is not itself the subject of the contested regulatory action the plaintiff is denied a right of review where its interests are so marginally related to or inconsistent with the purposes of the statute that it cannot reasonably be assumed that Congress intended to permit the suit. *Clarke v. Securities Industry Association,* 479 U.S. at 399, 107 S.Ct. at 757.

We find that Illinois does not fall within the zone of interests to be protected or regulated by the Act. First, Illinois is not the subject of the Secretary's action. Second, states have no constitutional or statutory role in federal military policy. The authority to provide for the national defense rests with Congress. That is a field in which the state has no place. The objectives of the Commission and thus the Act are to determine the best process for identifying bases to be closed or realigned, determine how to improve and best use federal government incentive programs to mitigate the negative impact of base closure or realignment, and determine the criteria on realigning and closing bases. Charter of Defense Secretary's Commission on Base Realignment and Closure, § 2. Illinois has no interest that is reasonably related to these objectives. Illinois' interest is solely in keeping the bases open in an attempt to head off the decreased tax revenues and increased social program expenditures that it alleges will occur. This interest is completely inconsistent with the objectives of the Act. Thus, Illinois does not satisfy the zone of interests test.

### III—CONCLUSION

We conclude that Plaintiff does not have standing to sue and that Defendant's motion to dismiss on that ground should be allowed. Plaintiff's standing to sue as *parens patriae* is foreclosed by *Massachusetts v. Mellon,* 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078 (1923), and *Alfred L. Snapp & Son, Inc. v. Puerto Rico,* 458 U.S. 592, 102 S.Ct. 3260, 73 L.Ed.2d 995 (1982). Moreover, Plaintiff has not shown injury in fact and has not satisfied the relevant prudential considerations. Thus, Illinois does not have standing to sue on its own behalf.

*Ergo,* for the reasons discussed herein, the motion to dismiss filed on behalf of Defendant Richard Cheney, Secretary of Defense, is ALLOWED.

Case CLOSED.